FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**IN THE UNITED STATES DISTRICT COURT** 2017 JAN 18  PM 3:28
**FOR THE DISTRICT OF COLORADO**

JEFFREY P. COLWELL
CLERK

Civil Action No. **17- CV-162**

JEFFERY A MASCIO,                                      BY_____DEP. CLK
MERIDIAN CAPITAL ADVISORS, LLC, a Colorado Limited Liability Company

       Plaintiffs,

v.

PETER GRAHAM AND SUZANNE
GRAHAM,

       Defendants.

---

## PETITION TO COMPEL ARBITRATION

---

Plaintiffs JEFFERY A MASCIO and MERIDIAN CAPITAL ADVISORS, LLC, a Colorado Limited Liability Company, (collectively "Meridian") pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 4, hereby petition this court for an order to compel Defendants PETER GRAHAM AND SUZANNE GRAHAM, ("Grahams") and together with Meridian, the ("Parties") to arbitrate claims against Meridian in accordance with the Parties' binding and mandatory arbitration agreement, alleges as follows:

### NATURE OF THE ACTION

1.    Meridian brings this Petition pursuant to Section 4 of the Federal Arbitration Act to compel Grahams to arbitrate all claims they brought, or could have brought, against Meridian in a Washington civil action, *PETER GRAHAM AND SUZANNE GRAHAM, husband and wife, v. JEFFERY A MASCIO, individually and on behalf of his marital community, MERIDIAN CAPITAL ADVISORS, LLC, a Colorado Limited Liability Company,* Case No. 16-2-01731-2 SEA (Washington Superior Court,

King County) (the "Action"). Grahams filed the Action on September 23, 2015, even though they agreed in writing, as a condition of the Investment Management Agreement, signed by the Grahams May 27, 2015 (the "Agreement") (*See* Exhibit A*)* to submit "all controversies and disputes which may arise between Client and Advisor concerning any transaction or the construction, performance, or breach of this agreement between Client and Advisor, whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding arbitration". Specifically, Section IX ARBITRATION, of the Agreement requires that all claims the Grahams have brought in the Action be submitted to arbitration under the Commercial Arbitration rules of the AAA in the City of Denver, State of Colorado.

## THE PARTIES

2.      Plaintiff, Meridian is a Limited Liability Company organized under the laws of Colorado with its principal place of business in Englewood, Colorado.

3.      Plaintiff, Mascio is Colorado citizen who is employed by Meridian with his principal place of business in Englewood, Colorado.

4.      Defendants, Grahams are Washington citizens who were clients of Meridian's from June 2011 until September 2015.

## JURISDICTION AND VENUE

5.      Plaintiffs brings this claim pursuant to 9 U.S.C. § 4.

6.      This Court has jurisdiction over the Petition pursuant to and 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Parties, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

7.      Venue is proper in this Court pursuant to 9 U.S.C. § 4, and because the Parties' written arbitration agreement provides for mandatory binding arbitration in Denver, Colorado.

## FACTUAL ALLEGATIONS

8.      Plaintiff, Meridian is a Colorado-based company that provides Investment Advisor services to sophisticated High-Net-Worth individuals and institutions.

9.      Defendants, the Grahams are former clients of Meridian.  They were clients from June 7, 2011 until September 24, 2015.

10.     On June 7, 2011, the Grahams entered into an Investment Management Agreement with Meridian effective May 20, 2011 that contained a mandatory and binding arbitration agreement. (*See* Exhibit A)

11.     On May 27, 2015 the Grahams signed an Investment Management Agreement effective May 1, 2015 that contained both a choice of law provision and a mandatory arbitration provision. *(See* Exhibit B)

12.     The choice of law provision and arbitration provision in the Investment Management Agreement effective May 1, 2015 Section IX. ARBITRATION provide as follows:

> *Client hereby agrees that all controversies and disputes which may arise between Client and Advisor concerning any transaction or the construction, performance, or breach of this Agreement between Client and Advisor, whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding arbitration. Client understands that this Agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such waiver would be void under federal securities laws. Any arbitration shall be held in the **City of Denver, State of Colorado**, administered by the American Arbitration Association (the "AAA") pursuant to the Federal Arbitration Act in accordance with this Agreement and the **Commercial Arbitration Rules of the AAA**. If the Federal Arbitration Act is inapplicable to any such controversy or dispute for any reason, such arbitration shall be **conducted pursuant to the Colorado Uniform Arbitration Act for Commercial Disputes** and in accordance with this Agreement and the **Commercial Arbitration Rules of the AAA**. To the extent that any inconsistency exists between this Agreement and such statutes or rules, this Agreement shall control. Judgment upon the award rendered by the arbitrators may be entered in and enforced by any court having jurisdiction and in accordance with the practice of such court.*" (Emphasis added) (*See* Exhibit B)

13.     Both the choice of law provision and the arbitration provision contained in Section IX ARBITRATION were material terms of the Agreement. By including them in the Agreement, both Meridian and the Grahams voluntarily relinquished their ability to bring claims arising out of, or related to, the Agreement between Advisor and Client in a forum other than binding arbitration under the Commercial Arbitration Rules of the AAA in the City of Denver, State of Colorado.

14.     Grahams signed and dated the Investment Management Agreement, indicating their acknowledgement, understanding, and acceptance of the terms contained therein, including the choice of law and binding arbitration provisions.

15.     On October 26, 2015, Grahams served Meridian with a complaint and filed the action on January 22, 2016 in King County Superior Court, asserting claims for (1) negligence; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) negligent failure to supervise; (5) securities law violations; and (6) consumer protection act violations (the "Complaint") (*See* Exhibit C)

16.     Each cause of action plainly arises out of, or is related to, the Agreement.

17.     The filing of the Complaint in King County Superior Court was contrary to the arbitration provision that the Grahams agreed to when they signed the Agreement.

18.     Upon service Meridian demanded that the Grahams Arbitrate the dispute in accordance with the Agreement.

19.     In February 2016, not in accordance with the Agreement's arbitration clause, the Grahams initiated arbitration proceedings in **Seattle, WA** before the AAA, Case No.: 01-16-0000-3903 ("first Arbitration") (*See* Exhibit D) under AAA ***"Consumer" Arbitration Rules.*** (emphasis added)

20.     The Grahams then moved the court for an order staying the lawsuit pending the conclusion of Arbitration.

21.     The unopposed motion was granted by the Court's Stay Order dated February 25, 2016.

22.     By plain terms of the Arbitration clause in the Agreement, the exclusive forum for bringing and resolving the Grahams' claims is binding arbitration under the ***Commercial Arbitration Rules of the AAA*** in the **City of Denver, State of Colorado**.

23.     Since the Grahams, contrary to the agreement, commenced the AAA arbitration in **Seattle, WA** and under the ***"Consumer"*** Rules of AAA rather that under the ***"Commercial"*** Rules of AAA in **Denver, CO** as the Arbitration clause in the agreement clearly states, Meridian refused to pay the fees and the arbitration was administratively closed on or around April 24, 2016. (See Exhibit E)

24.     The Grahams then filed a motion with the King County Court to lift the arbitration stay and reinstate proceedings.

25.     Meridian opposed the motion and upon opposition the Grahams withdrew the motion to lift the stay order imposed over the lawsuit.

26.     On July 18, 2016, the Grahams, once again disregarding the choice of law and venue specific provisions of the Agreement, filed yet another arbitration proceeding with AAA, Case number 01-16-002-9155 (the "Second Arbitration") (*See* Exhibit F) again in **Seattle, WA** and under the **Consumer** Rules of AAA rather than is **Denver, CO** under the **Commercial** Rules of AAA in accordance with the agreement.

27.     Meridian, frustrated by the Grahams continued insistence to arbitrate under the **Consumer Rules** of AAA in **Seattle, WA** rather than in **Denver, CO** under the **Commercial Rules** as agreed, decided reluctantly to move forward with the arbitration filed in Seattle, WA under Consumer Rules of AAA even though the Consumer Rules are more favorable to the Grahams over Meridian.

28.     Under the Consumer Rules of AAA the Arbitration clause in the Agreement must be registered in the AAA Consumer Clause Registry before the Arbitration with AAA can proceed. (*See* Exhibit G)

29.     If the Grahams would have filed the AAA arbitration in accordance with the Agreement under the Commercial Rules of AAA no such registry exists, Thus, no registration is required. (*See* Exhibit H)

30.     Although Meridian preferred to arbitrate in accordance with the Agreement under the Commercial Rules of AAA in Denver, CO, in acknowledgement of the Grahams' expressed desire to arbitrate in Seattle, WA under the Consumer Rules of AAA Meridian initiated an expedited arbitration clause registration with AAA on May, 11 2016 and paid all necessary clause registration fees. (See Exhibit I) Under the Commercial Rules of the AAA, Meridian would not incur such fees.

31.     Meridian communicated to Kit W Roth, attorney for the Grahams, that the expedited registration process for inclusion in the AAA Consumer Clause Registry had commenced and once approved Meridian would pay all required fees and move forward with arbitration under the Consumer Rules of the AAA.

32.     While Meridian was working closely with the AAA Consumer Clause Registry approval committee to obtain approval for inclusion in the Registry, a requirement for the Second Arbitration under the AAA Consumer Rules to proceed, the Grahams received a letter on August 2, 2016 stating AAA had closed the Second Arbitration because Meridian did not register its consumer clause on the AAA's Consumer Clause Registry (See Exhibit F).   The timing of this notice is of concern as the Meridian was only days away from approval.   As such, it is Meridian's belief that the Grahams may have proactively influenced the decision made by AAA to close the proceeding just before the AAA Consumer Clause Registry approval committee approved the Agreement's arbitration clause for inclusion in the AAA Consumer Clause Registry.   In fact, just days later Meridian received notice from AAA granting approval of the Agreement's arbitration clause for inclusion in the AAA Consumer Clause Registry. Meridian received a letter from AAA dated August 25, 2016 which stated in part as follows:

> *Based upon the administrative review of the Meridian Capital Advisors, LLC consumer arbitration clause, under current AAA policy, The AAA is prepared to administer consumer related disputes filed pursuant to this clause.  Meridian Capital Advisors. LLC and its consumer arbitration clause will be included on the Consumer Clause Registry.*
> (See Exhibit J)

33.     On August 15, 2016 Meridian was served with the Grahams' renewed motion to lift stay by US Mail just 5 court days before the court motion hearing was to be held in Seattle, WA with oral arguments on August 23, 2016.

34.     Although Meridian had registered to receive all court documents through the King County Court's eFile system the Grahams' elected to mail these particular documents to Meridian, giving Meridian only 2 days to prepare and respond to the Grahams' motion.  As a result, Meridian's

opposition to the Grahams' motion was deemed untimely filed and Stricken from the record. Thus, the Grahams' renewed motion to lift stay was deemed unopposed and the court entered an order lifting the stay.

35.     Meridian should have been granted an additional (3) days to respond to the Grahams' renewed motion to lift stay. Pursuant to KCLCR 7(b)(4)(A). The moving party shall serve and file all motion documents no later than six court days before the date the party wishes the motion to be considered. In addition, whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, three (3) days shall be added to the prescribed period CR 6(e).

36.     Meridian, seeking to preserve it's right to arbitration, has chosen not to appeal, motion for reconsideration, or further participate in the reconsideration of its timely filing in the King County Superior Court as this is a matter Federal law and reliance on WA state law may erroneously and unnecessarily suggest to a state judge that the protections of federal law can be ignored, or, worse yet have been waived as was the case in *Yates v. Doctor's Associates, Inc.,* 549 N.E.2d 1010, 1014 (Ill. App. Ct. 1990), where the appellate court held that a party had waived its rights under FAA by moving for a stay in the trial court.

37.     Meridian also fears the WA state court has shown a disturbing willingness to construe their own arbitration laws, or the parties' agreement, as to defeat a party's right to arbitrate as occurred in *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468 (1989)

38.     Initiating arbitration under AAA **Consumer** rules in **Seattle, WA** rather than in accordance with the Agreement that clearly states that all disputes must be conducted in accordance with AAA **Commercial** rules in Denver, CO breaches the Agreement's Section IX arbitration clause.

39.     Meridian has initiated an arbitration against the Grahams in accordance with the Agreement under the Commercial Rules of AAA in the City of Denver State of Colorado case #01-17-0000-3478. (See Exhibit K)

## FIRST CLAIM FOR RELIEF

### Compel Arbitration

40.     Under the "Agreement" dated May 27, 2015 between Petitioner Meridian and Respondent Grahams', there is a mandatory arbitration provision.

41.     Under the Federal Arbitration Act ("FAA") at 9 U.S.C. § 4:

> "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement would have jurisdiction under title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."

42.     This Petition may be granted under § 4 "without first taking the formal step of initiating or removing a federal question suit." *Vaden v. Discovery Bank*, 556 U.S. 49 (2009).

43.     This controversy falls within the Agreement's arbitration provision.

> *Client hereby agrees that all controversies and disputes which may arise between Client and Advisor concerning any transaction or the construction, performance, or breach of this Agreement between Client and Advisor, whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding arbitration."* (See Exhibit B)

44.     This controversy is a dispute based on failure to comply with Section IX ARBITRATION of the Agreement on a dispute pertaining to the Agreement. As such this controversy is a breach of the Agreement as Grahams' have not complied with the binding arbitration clause in the Agreement.

45.     Defendants have either refused to enter into arbitration or have not entered into arbitration in accordance with the Arbitration clause set forth in section IX ARBITRATION contained in the Agreement.

46.     As this case meets all of the requirements of Section 4 of the FAA this Court should grant Meridian's Petition to Compel Arbitration and enter an Order compelling the Grahams' to proceed with arbitration in accordance with the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners Meridian respectfully request this Court grant Plaintiffs' Petition to Compel Arbitration and enter and Order compelling Respondent Grahams to proceed with arbitration in accordance with the Agreement.  Meridian also requests the court grant any relief this Court deems just and appropriate.

DATED this 17th day of January, 2017.

Respectfully submitted,

By: _____
Jeffery A Mascio
President
Meridian Capital Advisor, LLC

By: _____
Jeffery A Mascio
Pro Se

**Plaintiffs' Address:**
Meridian Capital Advisors, LLC
Jeffery A Mascio
88 Inverness Cir East, A 208
Englewood, CO 80112

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January, 2017 a copy of this document was sent via US Mail to:

Kit W. Roth
700 Fifth Avenue, Suite 6100
Seattle WA 98104
(206) 452-0260
roth@kdg-law.com

Attorney for Plaintiffs Peter and Suzanne Graham

DATED this 17th day of January, 2017

By: _____

Jeffery A Mascio
President
Meridian Capital Advisors, LLC

By: _____

Jeffery A Mascio
Pro Se
88 Inverness Cir East
A-208
Englewood, CO 80112

Exhibit A



# Investment
# Management Agreement

*Effective May 20, 2011*

Please mail all documents including custodial forms to:

Meridian Capital Advisors, LLC
88 Inverness Circle East, A208
Englewood, CO 80112

If you have any questions about the Management
Agreement, please contact MCA at **1-877-300-9991.**
Please visit our website at <u>meridiancapitalmanagement.com</u>

## MAILING INSTRUCTIONS

Mail all documents including custodial forms to:

Meridian Capital Advisors, LLC
88 Inverness Circle East, A208
Englewood, CO 80112

## AGREEMENT INSTRUCTIONS

To open a new account at Meridian Capital Advisors, this Investment Management Agreement must be read thoroughly and completed in full. If any sections are not completed, we may be unable to open the account.

On the following pages, you need to complete:

Pages 5-10:  New Account Information; client signature(s) on page 10

Page 7:  If you elect to have management fees debited from a bank account instead of your custodial account, please staple to the front cover of this Agreement a voided check from that account.

Mail this document in its entirety to MCA

If you have any questions about this Agreement, please contact Meridian Capital Advisors, LLC at 1-877-300-9991

## AGREEMENT

This Investment Management Agreement ("Agreement") is between Meridian Capital Advisors, LLC ("MCA") and ("Client"). MCA is a Registered Investment Advisor and provides discretionary investment management services through individually managed accounts ("Account") at the Client's custodian. Client wishes to engage MCA to provide such investment management services. Alterations to this Agreement cannot be made without the express consent of MCA. The parties agree as follows:

I. MCA shall:

a. Determine and make investments for Client in the Account and vary such investments from time to time as MCA, in its sole discretion, deems best; MCA shall make investment decisions for the account according to the investment objectives, risk tolerance, investment time horizon, and any investment policies, guidelines or reasonable restrictions described in the client questionnaire.

b. Furnish investment advice and supervision on the basis of the individual Client's needs, and provide to Client, at least quarterly, an account statement of Client's investment positions;

c. Provide to Client a written description of fees, and notice of changes in fees;

d. Remain available to Client during normal business hours for consultation regarding the administration of Client's account and current financial condition or investment objectives; and

e. Establish a custodial account for the benefit of Client ("Client's Account") with TD Ameritrade Institutional, Division of TD Ameritrade, Inc. ("TD Ameritrade" or "Custodian") as Custodian on this account or any successor Custodian as MCA deems reasonable.

f. In its sole discretion, MCA will not take custody of any funds or securities on behalf of Client.

II. Client, as Recipient of MCA's Services:

a. Will establish an account with Custodian, or any successor, as Custodian.

b. Grants MCA full discretion to invest Client's Account and further appoints MCA agent and attorney-in-fact with full power and authority to buy, sell and trade for Client's Account.

c. Authorizes MCA to invest Client's assets in accordance with the client's investment objectives as described in the client questionnaire:

1. MCA is the Investment Adviser to the Account, and as such, MCA will be compensated by payment of a management fee for its advisory services to the Account as described in Section III; and

2. Client has received written disclosure of the investment advisory and other fees, as described in Section III.

d. Agrees, that on occasions, when MCA deems the purchase or sale of a security to be in the best interest of the Client as well as other MCA Clients, MCA, to the extent permitted by applicable laws and regulations may, but shall be under no obligation to, aggregate the securities to be purchased or sold in an attempt to obtain a more favorable price or lower commissions and efficient execution.

e. Ratifies and confirms all transactions, trades or dealings effected in and for Client's Account by MCA and agrees to hold MCA harmless from all responsibility for any loss of market value including losses due to market fluctuations which may occur while new accounts/ contributions or liquidations are being processed.

The foregoing does not preclude other rights or remedies the Client may have under the federal or any applicable state securities laws.

2

f. Acknowledges that all dividends or distributions received in Client's Account will be reinvested unless Client instructs MCA otherwise. Client further acknowledges that transactions effected for Client's Account, including purchases and sales, may produce dividends and distributions which may incur tax liabilities to Client even though reinvested for Client.

g. Agrees to notify MCA in writing of any restriction on account investments, changes in current financial condition, and investment objectives.

h. Authorizes MCA and/or Custodian to invest approximately a portion of Client assets in a non-FDIC· insured money market account, including that of the Custodian, to cover management fees or miscellaneous administrative fees, if any, and an additional percentage of Client's assets determined by the Client and MCA, for periodic distributions to Client, if applicable.

i. Acknowledges MCA's discretion to invest up to 100% of the account value, during times of unstable or adverse market or economic conditions, in temporary defensive instruments in an effort to enhance liquidity or preserve capital. Temporary defensive investments generally include cash and cash equivalents such as money market instruments. An account could also hold these types of securities pending the investment of proceeds from the sale of securities due to a rotation, to meet distribution requests, or when account documents have not been received in good order. MCA may invest in temporary defensive investments for undetermined periods of time, depending on market or economic conditions. To the extent a Portfolio invests defensively in these securities, it might not achieve its investment objective.

j. Acknowledges that MCA's investment strategy does not seek tax efficiencies and, as a result, may incur tax liabilities to the Client. Client is responsible for all tax liabilities.

## III. Management Fees

The parties understand and further agree to the following terms and conditions:

a. **Management Fees**

For its services as investment adviser, Client agrees to pay MCA a negotiable management fee as described below. This fee is composed of the management fee charged directly to Client's Account for managing the allocation in the portfolio and servicing the account ("Management Fee") MCA will notify the client of fee amounts and their specific calculation at the same time the custodian is directed to deduct fees from the client's custodial account. The gross management fees are as follows:

| Account Value | |
|---|---|
| First $50,000 | 2.5% |
| $50,001 - $100,000 | 1.75% |
| $100,001 - $500,000 | 1.5% |
| $500,001 - $1,000,000 | 1.25% |
| More than $1 million | 1.00% |

*The fee rates may be reduced in certain situations at MCA's discretion.

b. **Payment of Management Fee.** The Management Fee will be payable to MCA quarterly in advance based on the value of the Client Account on the last business day of the preceding calendar quarter. All such fees will be reflected on the quarterly statement. Management Fees may be amended by MCA upon sixty (60) days' written notice to Client. The fees shown above may differ from fees charged by other investment advisers for like services. MCA begins calculating management fees when assets are deposited into Client's Account.

## IV. Terms and Conditions

The parties understand and further agree to the following terms and conditions:

a. **Custodian**

1. Client acknowledges that a separate custodial account may be established for each investment strategy and that the terms and conditions contained in the custodial account application apply to each account individually, including all stated fees.

2. Client grants MCA full power of attorney to act on Client's behalf in matters involving the Custodian, including but not limited to changing custodians, receiving information from the Custodian and making other decisions involving the Custodian that may from time to time be necessary or desirable.

3. MCA may change custodians to any qualified bank, trust company or broker/dealer and expects to provide client with notice. Custodian is authorized and directed to effect transactions in Client's Account upon instruction from MCA including, but not limited to, paying fees to MCA directly from Client's Account.

4. Client agrees to complete all required paperwork of Custodian when applicable. In the event of a conflict between the terms of this Agreement and the paperwork of the Custodian, this Agreement shall control.

3

5. MCA shall be responsible for any exchange, redemption, or other fees assessed by mutual fund companies, except as described under Section IV.c.

6. Client pays all custodial fees for accounts held at Custodian. Custodian may offer MCA discounts based on the assets held with them. Any discounts are disclosed in MCA's Form ADV, Part II.

b. **Cancelation.** Client may cancel this Agreement within five (5) business days of its execution by MCA without penalty. Notwithstanding the foregoing, Client's investment will be subject to market fluctuation during this period. Client will be responsible for any tax implications.

c. **Termination.** Either party may terminate this Agreement by giving at least ten (10) days' notice in writing to the other. Upon termination, all securities will be liquidated unless otherwise requested in writing and signed by Client. Upon termination of any account(s) under this Agreement, Client shall be responsible for any exchange, redemption, or other fees assessed by mutual fund companies, the Custodian and market fluctuation. Management fees will be collected until MCA receives written notice from Client to terminate the account and has a reasonable amount of time to act on the instructions. Should the account value drop to a level that MCA is not able to manage efficiently, MCA may notify client in writing to deposit funds within 30 days. If the account is not funded adequately within the specified timeframe, MCA may liquidate and close the account. The account proceeds will be mailed to the address of record, and client will be responsible for any tax liabilities incurred.

d. **Assignment.** MCA will not assign this Agreement without the Client's written consent.

e. **Notice.** Notice means notice, delivered by personal delivery, mail, facsimile or email to the person to be notified at the address, phone number, or email address specified below. Notice given by personal delivery shall be effective upon delivery. Notice which is mailed shall be effective upon receipt or three business days after the mailing, whichever occurs first. Notice which is given by facsimile or email shall be effective upon transmittal.

Notice shall be delivered as follows:

To MCA:

Meridian Capital Advisors, LLC
88 Inverness Circle East, A208
Englewood, CO 80112
Facsimile: 877-211-3896
Email:
support@meridiancapitalmanagement.com

To Client:

At the address, facsimile number or email address of record on the account

f. This Agreement shall be governed by the laws of the State of Colorado.

g. No discretion of any kind has been granted to the Client's Financial Representative in this document. Custody documents, in general, do not grant the Client's Financial Representative a legal power of attorney to act under an account with MCA.

h. Client's instructions are processed as soon as MCA has had a reasonable amount of time to act upon them. If instructions are not in good order, MCA will attempt to contact the Financial Representative to obtain the required information. MCA will not be responsible for any market fluctuation or other ramifications due to delays in processing instructions that are not supplied in good order. Trade dates, settlement dates, and system processes may require additional time for processing. Please be advised that the redemption process takes time. Please plan accordingly.

## V. Risk Disclosure Statement

Investing in securities involves inherent risks, including the risk that you can lose the value of your investment. You should carefully consider whether such an investment is suitable for you based on your personal financial condition. Prior to authorizing MCA to invest your assets, you should carefully review the description of the investment objective you select and by which your account will be managed, as well as the risk profile and the respective prospectuses. Specifically, you should consider whether this objective is consistent with your personal risk tolerance and with your ability to achieve your financial goals in the event that your account should sustain a loss. Investments in international funds may entail unique risks, including political, market, regulatory and currency risks. In general, there is less governmental supervision of foreign stock exchanges and securities brokers and issuers. Investing in fixed income securities such as bonds involves interest rate risk. When interest rates rise, the value of fixed income securities generally decreases. High-yield bonds involve a greater risk of default and price volatility than U.S. Government and other higher-quality bonds.

## VI. Pre-Dispute Arbitration Agreement

In consideration of opening one or more MCA accounts, Client agrees that any dispute between Client and MCA relating to Client's Account, transactions with or for Client, or this Agreement shall be set led by arbitration under the rules of the American Arbitration Association, except to the extent set forth herein. The arbitration panel shall consist of at least three individuals, with at least one panelist having knowledge of investment advisory activities. Client understands and acknowledges that:

a. Pre-arbitration discovery is generally more limited than and is different from court proceedings.

b. The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or seek modification of rulings by the arbitrators is strictly limited.

The foregoing does not preclude other rights or remedies the Client may have under the federal or any applicable state securities laws.

## NEW ACCOUNT INFORMATION

This section must be fully completed. Please note that in compliance with the USA PATRIOT Act, certain information on your account application will be verified. As requested, please supply your full name, date of birth, Social Security number, and permanent address.
**P.O. Box will not be accepted**

If you do not supply the necessary information, you may not be permitted to open your account. If we or our agents are unable to verify your identity or that of another person authorized to act on your behalf, or if we or our agents believe we have identified potentially criminal activity, we reserve the right to close your account or take any other action we deem reasonable or required by law.

### 1. Client Information

_____
Client Name

_____
Client Social Security or Tax I.D. Number

_____
Account Registration (if different than Client Name)

_____
Account Tax I.D. Number if different than the Client. (i.e. trust)

If this is a joint account, it is the express intention of the undersigned that ownership of this account be registered as (check one):

☐   Joint Tenants With Rights of Survivorship
☐   Tenants in Common
☐   Community Property

If you do not specify, the account will be registered as Joint Tenants with Rights of Survivorship.

_____
Permanent Street Address (P.O. Box is not acceptable.)

_____
City                    State                    Zip Code

_____
Additional/Alternate Address for Correspondence
(If different than Permanent Street Address)

_____
City                    State                    Zip Code

_____
Telephone Number (daytime)

_____
Telephone Number (evening)

_____
E-Mail Address (optional)

_____
Date of Birth

_____
Emergency Contact Name

_____
Address

_____
Phone

_____
Joint Client Name (if any)

_____
Joint Client Social Security or Tax I.D. Number

_____
Telephone Number (daytime)

_____
Telephone Number (evening)

_____
E-Mail Address (optional)

_____
Date of Birth

## 2. Type of Account

Please also complete appropriate custodian paperwork and provide additional paperwork as noted. Additional documents may be required. Please call 1-877-300-9991 for information.

- ☐ Individual/Joint Account
- ☐ IRA
- ☐ SEP-IRA
- ☐ Self-Directed IRA (Trustee/Administrator authorization required)
- ☐ Roth IRA
- ☐ Solo 401(k)
- ☐ Qualified Retirement Plan (enclose MCA's Trust Certification)
- ☐ UGMA/UTMA
- ☐ Guardianship/Conservatorship (enclose copy of court appointment)
- ☐ Trust (enclose MCA's Trust Certification)
- ☐ Family LLC/Family LP (enclose Certification of Organization Resolution)
- ☐ Exempt 501(c) Organization (enclose Certification of Organization Resolution, W-9 Form and IRS Determination Letter)
- ☐ Partnership/Sole Proprietor/Organization (enclose Certification of Organization Resolution and partnership agreement, if applicable)
- ☐ Transfer on Death Account (enclose TOD Designation Request)
- ☐ Corporation (enclose Certification of Corporate Resolution)
- ☐ Estate (enclose Letters Testamentary)
- ☐ Other (specify: _____ )

## 3. Dividends and other distributions are to be:

Dividends:       reinvested       distributed
Capital Gains:   reinvested       distributed

UNLESS OTERWISE SPECIFIED, ALL DISTRIBUTIONS WILL BE REINVESTED. If the elections provided differ from those provided on the custodial application, the custodial application will control.

## 4. Annual Income (must be fully completed)

a. What is your current annual income from all sources (all household income)?

- ☐ Less than $25,000
- ☐ $25,000 - $50,000
- ☐ $50,000 - $100,000
- ☐ More than $100,000

b. What is your estimated total net worth (exclusive of home)?

- ☐ Less than $50,000
- ☐ $50,000 - $100,000
- ☐ $100,000 - $500,000
- ☐ More than $500,000

c. What is your estimated total liquid net worth [including cash and securities from all investments including this account, any IRAs, 403(b), and/or 401(k)]?

- ☐ Less than $50,000
- ☐ $50,000 - $100,000
- ☐ $100,000 - $500,000
- ☐ More than $500,000

d. Are you currently:

- ☐ Employed
- ☐ Retired
- ☐ Other __

e. If you are not currently employed, please provide the source of your annual income:

_____

f. Is your current income adequate for current basic needs?

Yes       No

g. You acknowledge that you understand the risks you are undertaking, and that there are no investment guarantees in investing in the stock market.

Yes       No

## 5. Investment Experience and Objective

a. Rate your investing experience:

- ☐ an experienced investor
- ☐ a novice investor
- ☐ some investment experience

b. Check if you have previously invested in:

- ☐ mutual funds
- ☐ individual stocks
- ☐ individual bonds

c. What is your overall primary investment objective *(please check all that apply)*? If the investment objective you select is inconsistent with the investment portfolio you elect, additional documentation may be required. Please contact MCA with questions.

- ☐ Capital appreciation
- ☐ Modest capital appreciation and some income

d. If your investment objectives differ from your selected portfolio(s) please explain:

- ☐ I am meeting my objectives through other investments
- ☐ I understand the discrepancy and still wish to proceed with this investment

e. Are you investing for a specific time period?

Yes, _____years       No

If you are investing for less than 5 years, please explain why: _____

_____

_____

_____

## 6. Initial Deposit/Custodial Information

☐ **By Check** in the amount of $ _____. I/We have enclosed a check payable to TD Ameritrade. Checks made payable to MCA will be returned.

☐ **By Wire** in the amount of $ _____. I/We will wire funds directly, after the MCA account is established at TD Ameritrade.

Wire Instructions for TD Ameritrade:
First National Bank of Omaha
16th and Dodge Streets, Omaha, NE 68102
ABA# 104000016
For Credit to: TD Ameritrade, Inc. Account# 16424641
For Further Credit to: Client's Full Name
TD Ameritrade A/C # _____

☐ **By Transfer** in the amount of $ _____ (approximate amount). I/We have completed and enclosed _____ copies of TD Ameritrade's Transfer Forms and have attached my/our most recent account statement(s) reflecting such assets. Please note that MCA will invest the proceeds as received and that while MCA will provide assistance with account transfers, MCA does not assume responsibility for managing the Account until the Account assets are received.

## 7. Management Fee Deduction Election

If election is left blank, fee will automatically be deducted from Client's Account.

☐ **Account Deduction.** I/We elect to have MCA's quarterly management fees automatically deducted from my/our Client Account(s).

**Bank Account Debit.** I/We hereby authorize MCA or Custodian to initiate debit entries for Such debit entries are to be made from my (our) Checking Account indicated below at the depository financial institution named below.

I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. law. Payment of quarterly management fees that I (we) owe to MCA for management of my (our) investment portfolio(s).

I (we) acknowledge that management fees will be deducted from my (our) checking account approximately 10 days after the end of each month. If the fees cannot be deducted from the designated account, I understand that they may be drafted from the investment account. The quarterly account statements reflect a statement of the management fees withdrawn and the assets upon which the fee was based.

Depository Name
_____

Branch
_____

City _____ State _____ Zip Code

Routing Number
_____

Account Number
_____

Client Name(s)
_____

Client Signature(s)
_____

This authorization is to remain in full force and effect until MCA has received written notification of its termination in such time and in such manner as to afford MCA and the Depository Financial Institution a reasonable opportunity to act on it.

Please staple VOIDED check from the indicated bank account to the front of this Agreement.

**8.   Affiliations and Acknowledgements** *(if applicable)*

a.   I am affiliated with or employed by:

☐   a bank, trust, or insurance company

☐   or a stock exchange or a member firm of an exchange or the Financial Industry Regulatory Authority an investment adviser

If so, notification of your intent to open an account and duplicate statements will be sent to your employer in accordance with current regulation. Additional documentation may be required.

b.   I am a:

☐   director

☐   10% shareholder

☐   officer of a publicly traded company other controlling person

If either a. or b. above apply, please provide name and address of Compliance Officer at Company to receive notice and duplicate statements and the name and phone number of the General Counsel.

_____

Company Name

_____

Compliance Officer Name

_____

Street Address

_____

City                     State                     Zip Code

_____

General Counsel Name

_____

Telephone Number

If you have checked any of the above, please supply account number(s) of other accounts you or members of your immediate family have with MCA.

_____

**9.   Special Instructions**

Please describe any special account restrictions and/or transfer information. Any restrictions you place on the type of securities MCA can purchase must be reasonable. It is difficult to monitor restrictions when investing in a Portfolio that invests in mutual funds. MCA has certain procedures designed to monitor and reasonably detect any errors or inconsistencies with your restrictions. However, by opening an account that invests in mutual funds, MCA may not be able to honor individual stock or industry restrictions. By opening your account, you understand and agree to be bound by such limitations.

## SIGNATURE/AUTHORIZATION

By signing below, I, the Client, acknowledge and agree that:

a.  I have read all of the terms and conditions of this entire Agreement including Exhibits, that govern this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time by MCA. By maintaining an account with MCA, I agree to all terms and conditions of this Agreement, as amended or modified by MCA. No term or condition may be changed without the express written consent of MCA. I certify under penalty of perjury that the information disclosed in this document is correct

b.  understand that MCA is relying on the representations and covenants contained in this Agreement, and I agree to indemnify, defend and hold harmless MCA and each director, officer, employee and agent, and each affiliate of such person, from any and all claims, demands, losses, damages, liabilities, costs, charges, reasonable attorney fees and expenses of any kind or nature arising out of anymisstatement or misrepresentation or omission of a material fact, which would, in light of the statements made, render them misleading, contained in this Agreement

c.  Except for negligence or malfeasance, or violation of applicable law, neither MCA nor its officers, directors or employees shall be liable for any action performed or omitted to be performed or for any errors of judgment in managing the account.

**THE FEDERAL SECURITIES LAWS IMPOSE LIABILITIES UNDER CERTAIN CIRCUMSTANCES ON PERSONS WHO ACT IN GOOD FAITH, AND THEREFORE NOTHING HERIN IN ANY WAY CONSTITUTE A WAIVER OR LIMITATION OF ANY RIGHTS WHICH UNDERSIGNED MAY HAVE UNDER ANY FEDERAL SECURITIES LAWS.**

d.  I have retained a copy of this Agreement for my records, and acknowledge receipt of MCA's Form ADV Part II and the prospectus or respective prospectuses.

e.  I have reviewed this Agreement to ensure each section is complete and all required signatures have been provided. By submitting this Agreement to MCA, even if all documents and signatures are not received in good order, we will assume that you intend to open the account. MCA may or may not accept and open the account, in its sole discretion.

f.  The parties agree that this Agreement constitutes the complete and exclusive understanding and agreement of the parties relating to the subject matter hereof and supersedes all prior understandings, agreements, negotiations, and discussions between the parties, whether written or oral.

g.  Counterpart Copies: This Agreement may be signed in counterpart or duplicate copies and any signed counterpart or duplicate copy shall be equivalent to a signed original for all purposes.

I UNDERSTAND THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT WHICH IS CONTAINED IN SECTION VI, PAGE 4

X _Peter J Gra____   6/7/11
Client Signature (REQUIRED)          Date

Peter J. Graham
Printed Name

X _Suz Y G_____   6/7/2011
Joint Client Signature (REQUIRED if applicable)   Date

Suzanne Y. Graham
Printed Name

X _____
Trustee/Administrator Signature (if applicable)   Date

_____
Printed Name and Title

FOR MCA USE ONLY

X _____
Authorized Signature          Date

_____
Title

# MCA Privacy Information

| FACTS | WHAT DOES MCA DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and account balances<br>• income and transaction history<br>• checking account information and wire transfer instructions<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons MCA chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does MCA share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | No | We don't share |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | For more information about MCAs privacy policies Call 1-877-300-9991 or email:support@meridiancapitalmanagement.com |
|---|---|

11

| Who we are | |
| --- | --- |
| Who is providing this notice? | Meridian Capital Advisors, LLC. ("MCA") |

| What we do | |
| --- | --- |
| How does MCA protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| | Contracts with our service providers require them to restrict access to your non-public personal information, and to maintain physical, electronic and procedural safeguards against unintended disclosure. |
| How does MCA collect my personal information? | We collect your personal information, for example, when you<br>▪ open an account or enter into an investment advisory contract<br>▪ provide account information or give us your contact<br>▪ make a wire transfer<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>▪ sharing for affiliates' everyday business purposes — information about your creditworthiness<br>▪ affiliates from using your information to market to you<br>▪ sharing for non-affiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| Definitions | |
| --- | --- |
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>▪ *Our affiliates include Bertram Global Commodities Fund, LP.* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>▪ *Nonaffiliates we share with can include financial companies such as custodians, transfer agents, registered representatives, financial advisers, fulfillment, proxy voting, and class action service providers* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>▪ *MCA doesn't jointly market* |

12



Meridian Capital Advisors, LLC
88 Inverness Circle East, A208
Englewood, CO 80112
1-877-300-9991
meridiancapitalmanagement.com

Exhibit B



# Investment
# Management Agreement

*Effective May 1, 2015*

Please mail all documents including custodial forms to:

Meridian Capital Advisors, LLC
88 Inverness Circle East, A208
Englewood, CO 80112

If you have any questions about the Management
Agreement, please contact MCA at **1-877-300-9991**.
Please visit our website at **meridiancapitalmanagement.com**

## INVESTMENT MANAGEMENT AGREEMENT

This Investment Management Agreement ("Agreement") is made and entered into by and between ("Client") and Meridian Capital Advisors, LLC a Colorado Limited Liability Company ("MCA"), an investment advisor registered under the Investment Advisors Act of 1940, as amended (the "Advisors Act"), for the purpose of setting forth the terms and conditions pursuant to which Advisor will manage Client's assets designed for management hereunder.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

I. APPOINTMENT AS INVESTMENT ADVISOR:
   a. Client hereby appoints and retains Advisor as investment advisor and attorney-in-fact on the terms and conditions set forth in this Agreement for those assets which Client may from time to time place with Advisor, and any appreciation, income or proceeds thereon (the "Account"). Advisor accepts the appointment as investment advisor and agrees to manage and direct the investments of the Account, subject to any Investment Guidelines (defined in Section X below) communicated to Advisor in advance and in writing. Advisor assumes responsibility for the investment management of, and all trading decisions for, the Account as of the date assets are placed in the Account.

II. MCA SHALL:
   a. Have full discretionary authority with respect to the investment and reinvestment of the assets of the Account, subject to the Investment Guidelines. Advisor, when it deems appropriate, without prior consultation with or notification of Client.
   b. Purchase, sell, exchange, convert and otherwise trade in securities, including but not limited to money market instruments, mutual funds, stocks, options, futures, option on futures, and warrants, on margin or otherwise ("Investments"), for such prices, at such times and on such terms as Advisor, in its sole discretion, deems advisable.
   c. Place orders for the execution of transactions with or through brokers, dealers or issuers Advisor selects in its sole discretion, including broker-dealer with whom Advisor may be related.
   d. Render, furnish and provide advice, analyses and other information concerning the retention, monitoring, performance or termination of other investment advisors or asset managers.
   e. Provide to Client a written description of fees, and notice of changes in fees.
   f. Negotiate, on Client's behalf, the terms and conditions, and execute and deliver all agreements and ancillary documents incidental thereto, necessary to open accounts in the name, or for the benefit, of Client with such brokers, dealers, advisors, managers, issuers or custodians as Advisor may select with respect to the Account.

   g. Act on Client's behalf in all matters necessary or incidental to servicing the Account, including all transactions for the Account. Client will furnish Advisor with all additional powers of attorney and other documentation, if any, necessary to appoint Advisor as agent and attorney-in-fact with respect to the Account, but such powers shall not be construed to authorize Advisor to take any action not authorized by this Agreement.
   h. In its sole discretion. MCA will not take custody of any funds or securities on behalf of Client.

   The foregoing authority shall remain in full force and effect until; (a) revoked by Client pursuant to written notice to Advisor, or (b) the termination of this Agreement pursuant to the terms of Section VII.c below. Revocation shall not affect transactions entered into prior to such revocation.

III. CUSTODIANSHIP:
   a. A custodial account for the benefit of Client ("Client's Account") with Interactive Brokers, LLC. ("IB" or "Custodian") as Custodian on this account or any successor Custodian as MCA deems reasonable.
   b. All Investments held in the Account may be registered in the name of Client or its nominee or held in street name.
   c. Custodian is responsible for the physical custody of the assets of the Account; for the collection of any interest, dividends or other income attributable to the assets of the Account; and for the exercise of rights and tenders on assets of the Account.

   Advisor is not responsible for any loss incurred by reason of any act or omission of Custodian; provided, however, that Advisor will make reasonable efforts to require that Custodian perform its obligations with respect to the Account.

IV. CLIENT, AS RECIPIENT OF MCA'S SERVICES:
   a. Will establish an account with IB, or any successor, as Custodian.
   b. Grants MCA full discretion to invest Client's Account and further appoints MCA agent and attorney-in-fact with full power and authority to buy, sell and trade for Client's Account.
   c. Authorizes MCA to invest Client's assets in accordance with the client's investment objectives as described in the client questionnaire:
      1. MCA is the Investment Advisor to the Account, and as such, MCA will be compensated by payment of a management fee for its advisory services to the Account as described in Section V; and
      2. Client has received written disclosure of the investment advisory and other fees, as described in Section VI.
   d. Agrees, that on occasions, when MCA deems the purchase or sale of a security to be in the best interest

## INVESTMENT MANAGEMENT AGREEMENT

be debited $54.79 daily based on the following equation.

$$y = \frac{\alpha(\chi)}{\beta}$$

b. Client's custodial account may differ from fees charged by other investment advisors for like services. MCA begins calculating management fees when assets are deposited into Client's Account.

c. **MCA performance-based fee structure.** Select highly qualified investors wishing to participate in MCA's performance based fee structure must meet the SEC's definition of a "qualified client" under rule 205-3 in the Investment Advisors Act of 1940. In addition, MCA requires ALL of the following criteria must also be met and the Client must agree to the terms and conditions set forth in Section X;

—— Client must have at least $1 million in assets under management with MCA and

—— Client must have a net worth of at least $2 million at the time a contract is signed and

—— Client must qualify and be approved for portfolio margin by IB.

b. MCA Performance-based fees will be debited from the Clients account quarterly in arrears. MCA Performance-based fees will not exceed a 2% annual base and 20% of performance with a high watermark and can be reduced at the discretion of MCA.

c. MCA will notify the client of fee amounts and their specific calculation at the same time the custodian is directed to deduct fees from the client's custodial account.

## VII. TERMS AND CONDITIONS
THE PARTIES UNDERSTAND AND FURTHER AGREE TO THE FOLLOWING TERMS AND CONDITIONS:

a. **Custodian**

1   Client acknowledges that a separate custodial account may be established for each investment strategy and that the terms and conditions contained in the custodial account application apply to each account individually, including all stated fees.

2   Client grants MCA full power of attorney to act on Client's behalf in matters involving the Custodian, including but not limited to changing Custodian, receiving information from the Custodian and making other decisions involving the Custodian that may from time to time be necessary or desirable.

3   MCA may change custodians to any qualified bank, trust company or broker/dealer and expects to provide client with notice. Custodian is authorized

and directed to effect transactions in Client's Account upon instruction from MCA including, but not limited to, paying fees to MCA directly from Client's Account.

4   Client agrees to complete all required paperwork of Custodian when applicable. In the event of a conflict between the terms of this Agreement and the paperwork of the Custodian, this Agreement shall control.

5   MCA shall be responsible for any exchange, redemption, or other fees assessed by mutual fund companies, except as described under Section VII.c.

6   Client pays all custodial fees for accounts held at Custodian. Custodian may offer MCA discounts based on the assets held with them. Any discounts are disclosed in MCA's Form ADV, Part II.

b. **Cancelation.** Client may cancel this Agreement within five (5) business days of its execution by MCA without penalty. Notwithstanding the foregoing, Client's investment will be subject to market fluctuation during this period. Client will be responsible for any tax implications.

c. **Termination.** Either party may terminate this Agreement by giving at least ten (10) days' notice in writing to the other. Upon termination, all securities will be liquidated unless otherwise requested in writing and signed by Client. Upon termination of any account(s) under this Agreement, Client shall be responsible for any exchange, redemption, or other fees assessed by mutual fund companies, the Custodian and market fluctuation. Management fees will be collected until MCA receives written notice from Client to terminate the account and has a reasonable amount of time to act on the instructions. Should the account value drop to a level that MCA is not able to manage efficiently, MCA may notify client in writing to deposit funds within 30 days. If the account is not funded adequately within the specified timeframe, MCA may liquidate and close the account. The account proceeds will be mailed to the address of record, and client will be responsible for any tax liabilities incurred.

d. **Assignment.** No assignment (as that term is defined in the Advisors Act) of this Agreement may be made by either party without consent of the non-assigning party. For purposes of determining Client consent in the event of an assignment, Advisor will send Client written notice of the Assignment. If Client does not object in writing within sixty (60) days of sending of such notice, Client will be deemed to have consented to the assignment. This Agreement and all subsequent amendments shall inure to the benefit of the successor and assignings of the parties hereto.

e. **Notice.** Notice means written notice, delivered by personal delivery, mail, facsimile or email to the person to be notified at the address, phone number, or email address specified below. Notice given by personal delivery shall be effective upon delivery. Notice which is mailed shall be effective upon receipt

## INVESTMENT MANAGEMENT AGREEMENT

of the Client as well as other MCA Clients, MCA, to the extent permitted by applicable laws and regulations may, but shall be under no obligation to, aggregate the securities to be purchased or sold in an attempt to obtain a more favorable price or lower commissions and efficient execution.

e. Ratifies and confirms all transactions, trades or dealings effected in and for Client's Account by MCA and agrees to hold MCA harmless from all responsibility for any loss of market value including losses due to market fluctuations, computer glitches failures or malfunctions, market inefficiencies, thinly traded markets, algorithmic trading, and possible auto-liquidations by IB which may occur pursuant to IB's portfolio margin policies as described in Section X.

f. Acknowledges that all dividends, distributions, premiums received from the short sale of options and/or future contracts, and/or trading profits received in Client's Account will be reinvested unless Client instructs MCA otherwise. Client further acknowledges that trading effected for Client's Account, including purchases, sales, assignment and/or expiration of option, future, and/or options on futures may produce dividends, distributions, and capital gains which may incur significant tax liabilities to Client even though reinvested for Client.

g. Agrees to notify MCA in writing of any restriction on account investments, changes in current financial condition, and investment objectives.

h. Authorizes MCA and/or Custodian to invest approximately a portion of Client assets in a non-FDIC- insured money market account, including that of the Custodian, to cover management fees or miscellaneous administrative fees, if any, and an additional percentage of Client's assets determined by the Client and MCA, for periodic distributions to Client, if applicable.

i. Acknowledges MCA's discretion to invest up to the full marginable value of the account.

j. Acknowledges MCA's discretion to invest and carry concentrated positions that may have little or no market as could be the case with various long dated option contracts.

k. Acknowledges MCA's discretion to invest up to the full marginable value of the account, during times of unstable or adverse market or economic conditions, in temporary defensive instruments in an effort to enhance liquidity or preserve capital. Temporary defensive investments generally include cash and cash equivalents such as money market instruments. An account could also hold these types of securities pending the investment of proceeds from the sale of securities due to a rotation, to meet distribution requests, or when account documents have not been received in good order.

l. Acknowledges MCA's discretion to invest up to the full marginable value of the account in an attempt to hedge unfavorable market conditions in derivatives, options, futures, options on futures, FOREX, and

various illiquid instruments dependent on market and/or economic conditions deemed suitable by MCA.

m. Acknowledges that MCA's investment strategy does not seek tax efficiencies and, as a result, may incur tax liabilities to the Client. Client is responsible for all tax liabilities.

n. Acknowledges to the extent a portfolio invests in these securities under full margin, it could lose money in excess of the amount invested and may not achieve its investment objective.

The foregoing does not preclude other rights or remedies the Client may have under the federal or any applicable state securities laws.

V. MANAGEMENT FEES:
The parties understand and further agree to the following terms and conditions:

a. For its services as investment advisor, Client agrees to pay MCA a negotiable management fee as described below. This fee is composed of the management fee charged directly to Client's Account for managing the portfolio, executing trade strategies, and servicing the account ("Management Fee").

b. MCA will notify the client of fee amounts and their specific calculation at the same time the custodian is directed to deduct fees from the client's custodial account.

VI. MCA FEE STRUCTRE (*please initial next to fee election*):

a. **MCA Standard Asset based Management Fees**. Asset based management fees are payable to MCA on the account value at the close of the billing period (x) times the billing Tier (α) divided by the billing period (β) equals the fee debited from the client account for that period (y). $y = \frac{\alpha(x)}{\beta}$

— Daily (β=365)
— Monthly (β=12)
— Quarterly (β=4)

| Account Value (x) | Tier (α) |
|---|---|
| Under $1,000,000 | 2.0% |
| $1,000,001 - $2,500,000 | 1.5% |
| $2,500,001 - $5,000,000 | 1.0% |
| $5,000,001 - $10,000,000 | .8% |
| More than $10 million | .65% |

*The fee rates may be reduced in certain situations at MCA's discretion*

b. For example. Client account value is $1,000,000.00 and has select the **daily** option for fee withdrawal. Each day at the close of business IB will calculate the management fee based on the above annualized fee schedule for above 1,000,000.00 @ 2%. Client would

## INVESTMENT MANAGEMENT AGREEMENT

or three business days after the mailing, whichever occurs first. Notice which is given by facsimile or email shall be effective upon transmittal.

Notice shall be delivered as follows:

**To MCA:**

Meridian Capital Advisors, LLC
88 Inverness Circle East, A208
Englewood, CO 80112
Facsimile: 877-211-3896
Email:
support@meridiancapitalmanagement.com

**To Client:**

At the address, facsimile number or email address of record on the account

f.   **Confidential Relationship.** All information and advice furnished by either party to the other shall be treated as confidential and shall not be disclosed to third parties except as required by law. For purposes of this Section f and subject to any applicable law, rule or regulation, principals and affiliates of Advisor shall not be considered third parties. Additionally, I hereby authorize you to share information about my account with my spouse. I can revoke this authorization by written notice to you.

g.   **Proxy Voting.** Advisor does not vote Client proxies. Client is responsible for voting any such proxies. Advisor will instruct the Custodian to forward any proxy materials involving securities in the account to Client, and not to Advisor. The Custodian, and not Advisor, is responsible for timely transmission of any proxy materials to Client.

h.   **Liability.** Advisor shall not be subject to liability for: (i) any act or omission in the course of, or connected with, Advisor's performance of this Agreement, in the absence of willful misfeasance, bad faith or gross negligence on the part of Advisor, or reckless disregard by Advisor of its obligations and duties under this Agreement; (ii) any loss arising from the Advisor's adherence to instructions provided by Client or Advisor's compliance with Client's investment objectives, as amended from time to time; or (iii) any act or failure to act by the Custodian, or by any other third party. Nothing in this Agreement shall in any way constitute a waiver or limitation of any rights which Client may have under any federal or state securities law or ERISA, if applicable. In some instances, federal and state securities law, including, but not limited to, the Advisors Act and ERISA, may impose liability or allow for legal remedies even where Advisor has acted in good faith. All actions taken by Advisor hereunder, either before or after the death or incapacity of the undersigned, but before receipt by Advisor of information of such death or incapacity, shall be binding upon Client and Client's legal representatives who shall hold Advisor harmless hereunder from all liability arising from such action so taken.

i.   **Disclaimers and Limitations.** Client's investments are subject to risks associated with investing in securities, including various market, currency, economic, political and business risks. Advisor does not guarantee the performance of Client's investments or guarantee that Advisor's investment advice or strategies will be successful or that Client's investment objectives will be met. In the event that Client directs Advisor to use a particular broker or dealer, Advisor may not be authorized under those circumstances to negotiate commissions and may not be able to obtain volume discounts or best execution. In addition, under these circumstances a disparity in commission charges may exist between the commissions charged to clients who direct Advisor to use a particular broker or dealer.

VIII. RISK DISCLOSURE STATEMENT

Investing in securities involves inherent risks, including the risk that you can lose the value of your investment. You should carefully consider whether such an investment is suitable for you based on your personal financial condition. Prior to authorizing MCA to invest your assets, you should carefully review the description of the investment objective you select and by which your account will be managed, as well as the risk profile and the respective prospectuses. Specifically, you should consider whether this objective is consistent with your personal risk tolerance and with your ability to achieve your financial goals in the event that your account should sustain a loss. Investments in derivatives, options, futures, and FOREX may entail unique risks, including political, market, regulatory, leverage, and currency risks and it is possible to lose more than your investment. Limited Partnerships have liquidity risk and could decrease in value and have no remedy to sell the investment in an open market. In general, there is less governmental supervision of foreign stock exchanges and securities brokers and issuers. Investing in fixed income securities such as bonds involves interest rate risk. When interest rates rise, the value of fixed income securities generally decreases. High-yield bonds involve a greater risk of default and price volatility than U.S. Government and other higher-quality bonds.

IX. ARBITRATION.

Client hereby agrees that all controversies and disputes which may arise between Client and Advisor concerning any transaction or the construction, performance, or breach of this Agreement between Client and Advisor, whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding arbitration. Client understands that this Agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such waiver would be void under federal securities laws. Any arbitration shall be held in the City of Denver, State of Colorado, administered by the American Arbitration Association (the "AAA") pursuant to the Federal Arbitration Act in accordance with this Agreement and the Commercial Arbitration Rules of the AAA. If the Federal Arbitration Act is inapplicable to any such controversy or dispute for any reason, such arbitration shall be conducted

**INVESTMENT MANAGEMENT AGREEMENT**

pursuant to the Colorado Uniform Arbitration Act for Commercial Disputes and in accordance with this Agreement and the Commercial Arbitration Rules of the AAA. To the extent that any inconsistency exists between this Agreement and such statutes or rules, this Agreement shall control. Judgement upon the award rendered by the arbitrators may be entered in and enforced by any court having jurisdiction and in accordance with the practice of such court.

**X. PERFORMANCE BASED FEE STRUCTURE**

### TO BE COMPLETED ONLY BY QUALIFIED CLIENTS

TERMS, CONDITIONS, DISCLAIMERS AND LIMITATIONS OF LIABILITY WITH RESPECT TO PERFORMACE BASED FEE STRUCTURE AND PORTFOLIO MARGIN ACCOUNTS.

THE PARTIES UNDERSTAND AND FURTHER AGREE TO THE FOLLOWING TERMS AND CONDITIONS:

SUBJECT TO THE REQUIREMENTS UNDER FEDERAL OR STATE SECURITIES LAW OR ERISA, IF APPLICABLE, IN THE ABSENCE OF WILLFUL MISFEASANCE, BAD FAITH OR GROSS NEGLIGENCE ON THE PART OF ADVISOR, OR RECKLESS DISREGARD BY ADVISOR OF ITS OBLIGATIONS AND DUTIES UNDER THIS AGREEMENT CLIENTS ELECTING TO PARTICIPATE IN MCA PERFORMANCE-BASED FEE STRUCTURE AND/OR PORTFOLIO MARGIN AT IB AGREE AS FOLLOWS: (*client must initial*)

Initials ___ Initials ___ MCA shall not be subject to liability for any loss arising from the Advisor's adherence to instructions provided by Client or Advisor's compliance with Client's investment objectives, as amended from time to time.

Initials ___ Initials ___ My investment objective is speculation and trading profits.

Initials ___ Initials ___ I have been provided read and understand the "Portfolio Margin Risk Disclosure".

Initials ___ Initials ___ I have been provided read and understand the "Options Trading Risk Disclosure".

Initials ___ Initials ___ I Acknowledge and understand MCA may write uncovered call options which exposes an investor to potentially significant losses.

Initials ___ Initials ___ I Acknowledge and understand MCA may enter concentrated positions that may have limited liquidity and the risks associated.

Initials ___ Initials ___ I represent, warrant and confirm that I have such knowledge and experience in financial and business matters and in particular option strategy trading models and I am capable of evaluating the merits and risks associated with participation in MCA Performance-based trading program.

Initials ___ Initials ___ I Acknowledge my account with MCA has been open for at least 12months.

## NEW ACCOUNT INFORMATION

This section must be fully completed. Please note that in compliance with the USA PATRIOT Act, certain information on your account application will be verified. As requested, please supply your full name, date of birth, Social Security number, and permanent address.
**P.O. Box will not be accepted**

If you do not supply the necessary information, you may not be permitted to open your account. If we or our agents are unable to verify your identity or that of another person authorized to act on your behalf, or if we or our agents believe we have identified potentially criminal activity, we reserve the right to close your account or take any other action we deem reasonable or required by law.

### 1. Client Information

**Peter J Graham**

Client Name

███████████

Client Social Security or Tax I.D. Number

Account Registration (if different than Client Name)

Account Tax I.D. Number if different than the Client. (i.e. trust)

If this is a joint account, it is the express intention of the undersigned that ownership of this account be registered as (check one):

☐ Joint Tenants With Rights of Survivorship
☑ Tenants in Common
☐ Community Property

If you do not specify, the account will be registered as Joint Tenants with Rights of Survivorship.

**2743 NE 103rd Street, Unit B**

Permanent Street Address (P.O. Box is not acceptable.)

| **Seattle** | **WA** | 98125 |
|---|---|---|
| City | State | Zip Code |

---

Additional/Alternate Address for Correspondence (if different than Permanent Street Address)

| City | State | Zip Code |
|---|---|---|
| **8433238407** | | |

Telephone Number (daytime)

Telephone Number (evening)

**pjg_68@yahoo.com**

E-Mail Address (optional)

**12/13/1968**

Date of Birth

Emergency Contact Name

Address

Phone

---

**Suzanne Y Graham**

Joint Client Name (if any)

███████████

Joint Client Social Security or Tax I.D. Number

**8433238407**

Telephone Number (daytime)

Telephone Number (evening)

E-Mail Address (optional)

Date of Birth

## 2. Type of Account

Please also complete appropriate custodian paperwork and provide additional paperwork as noted. Additional documents may be required. Please call 1-877-300-9991 for information.

- ☑ Individual/Joint Account
- ☑ IRA
- ☐ SEP-IRA
- ☐ Self-Directed IRA (Trustee/Administrator authorization required)
- ☐ Roth IRA
- ☐ Solo 401(k)
- ☐ Qualified Retirement Plan (enclose MCA's Trust Certification)
- ☐ UGMA/UTMA
- ☐ Guardianship/Conservatorship (enclose copy of court appointment)
- ☐ Trust (enclose MCA's Trust Certification)
- ☐ Family LLC/Family LP (enclose Certification of Organization Resolution)
- ☐ Exempt 501(c) Organization (enclose Certification of Organization Resolution, W-9 Form and IRS Determination Letter)
- ☐ Partnership/Sole Proprietor/Organization (enclose Certification of Organization Resolution and partnership agreement, if applicable)
- ☐ Transfer on Death Account (enclose TOD Designation Request)
- ☐ Corporation (enclose Certification of Corporate Resolution)
- ☐ Estate (enclose Letters Testamentary)
- ☐ Other (specify: _____)

## 3. Dividends and other distributions are to be:

Dividends: ☑ reinvested   ☐ distributed
Capital Gains: ☑ reinvested   ☐ distributed

**UNLESS OTERWISE SPECIFIED, ALL DISTRIBUTIONS WILL BE REINVESTED. If the elections provided differ from those provided on the custodial application, the custodial application will control.**

## 4. Annual Income (must be fully completed)

a. What is your current annual income from all sources (all household income)?

- ☐ Less than $100,000
- ☑ $100,000 - $500,000
- ☐ $500,000 - $1,000,000
- ☐ $1,000,000 - $2,000,000
- ☐ More than $2,000,000

b. What is your estimated total net worth (exclusive of home)?

- ☐ Less than $100,000
- ☐ $100,000 - $500,000
- ☐ $500,000 - $1,000,000
- ☐ $1,000,000 - $2,000,000
- ☑ More than $2,000,000

c. What is your estimated total liquid net worth [including cash and securities from all investments including this account, any IRAs, 403(b), and/or 401(k)]?

- ☐ Less than $100,000
- ☐ $100,000 - $500,000
- ☐ $500,000 - $1,000,000
- ☐ $1,000,000 - $2,000,000
- ☑ More than $2,000,000

d. Are you currently:

- ☑ Employed
- ☐ Retired
- ☐ Other __

e. If you are not currently employed, please provide the source of your annual income:

f. Is your current income adequate for current basic needs?
☑ Yes   ☐ No

g. You acknowledge that you understand the risks you are undertaking, past performance is not an indication of future returns. MCA makes no investment guarantees. YOUR INVESTMENTS COULD LOSE MONEY
☑ Yes   ☐ No

## 5. Investment Experience and Objective

a. Investment Experience:

- ☑ Extensive      ☐ None
- ☐ Good
- ☐ Limited

b. Years of Investment experience:

- 20 Stocks         8 Bonds
- 15 Options        0 FOREX
- 0 Futures

c. What is your overall primary investment objective (please check all that apply)? If the investment objective you select is inconsistent with the investment portfolio you elect, additional documentation may be required. Please contact MCA with questions.

- ☐ Capital Preservation      ☐ Income
- ☐ Capital Appreciation
- ☑ Speculation and trading profits *

*speculation and trading profits must be the objective for portfolio margin and/or MCA performance-based billing option*

d. If your investment objectives differ from your selected portfolio(s) please explain:

- ☑ I am meeting my objectives through other investments
- ☐ I understand the discrepancy and still wish to proceed with this investment

e. Are you investing for a specific time period?
☐ Yes, ____years      ☑ No

If you are investing for less than 5 years, please explain why: _____

### 6.  Initial Deposit/Custodial Information

☐  **By Check** in the amount of $ _____.I/We have enclosed a check payable to **Interactive Brokers**. Checks made payable to MCA will be returned.

☐  **By Wire** in the amount of $ _____ .I/We will wire funds directly,

☐  **By Transfer** in the amount of $ _____ (approximate amount).   I/We have completed and enclosed

Transfer Forms and have attached my/our most recent account statement(s) reflecting such assets. Please note that MCA will invest the proceeds as received and that while MCA will provide assistance with account transfers, MCA does not assume responsibility for managing the Account until the Account assets are received.

### 7.  Management Fee Election

If election is left blank, MCA's Standard Asset based Management fee will automatically be deducted from Client's Account Daily.

**MCA Standard Asset based Management Fees**
☐ Daily   ☐ Monthly   ☐ Quarterly

_Initials_   _Initials_

**MCA performance-based fee structure**
By selecting this option you certify that you understand the risks associated and have read and agree to be bound by the terms of this agreement.

**Bank Account Debit.**  I/We hereby authorize MCA or Custodian to initiate debit entries for such debit entries are to be made from my (our) Checking Account indicated below at the depository financial institution named below.

I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. law. Payment of quarterly management fees that I (we) owe to MCA for management of my (our) investment portfolio(s).

Depository Name

Branch

City                    State                    Zip Code

Routing Number

Account Number

Client Name(s)

Client Signature(s)

This authorization is to remain in full force and effect until MCA has received written notification of its termination in such time and in such manner as to afford MCA and the Depository Financial Institution a reasonable opportunity to act on it.

**Please staple VOIDED check from the indicated bank account to the front of this Agreement.**

## 8. Affiliations and Acknowledgements *(if applicable)*

   a.  I am affiliated with or employed by:

     ☐  A bank, trust, or insurance company

     ☐  Or a stock exchange or a member firm of an exchange or the Financial Industry Regulatory Authority an investment adviser

If so, notification of your intent to open an account and duplicate statements will be sent to your employer in accordance with current regulation. Additional documentation may be required.

   b.  I am a:

     ☐  Director

     ☐  10% shareholder

     ☐  Officer of a publicly traded company

     ☐  Other control person

If either a. or b. above apply, please provide name and address of compliance officer at the company to receive notice and duplicate statements and the name and phone number of the General Counsel.

**Company Name**

**Compliance Officer Name**

**Street Address**

**City**          **State**          **Zip Code**

**General Counsel Name**

**Telephone Number**

If you have checked any of the above, please supply account number(s) of other accounts you or members of your immediate family have with MCA.

## 9. Special Instructions

Please describe any special account restrictions and/ or transfer information. Any restrictions you place on the type of securities MCA can purchase must be reasonable. It is difficult to monitor restrictions when investing in a Portfolio that invests in mutual funds. MCA has certain procedures designed to monitor and reasonably detect any errors or inconsistencies with your restrictions. However, by opening an account that invests in mutual funds, MCA may not be able to honor individual stock or industry restrictions. By opening your account, you understand and agree to be bound by such limitations.

## 10. ERISA Accounts

☐ **Check here if Client is subject to the Employee Retirement Income Securities Act of 1974 as amended ("ERISA") or section4975(e)(3) of the Internal Revenue Code of 1986, as amended ("IRC").**

If Client is subject to ERISA or IRC, Client hereby represents to have full power, authority and capacity to execute this Agreement. Client acknowledges that this Agreement is entered into by Client as a fiduciary, including, but not limited to, someone meeting the definition of "fiduciary" under ERISA or IRC, or an employee benefit plan subject to ERISA. Client, as fiduciary, represents and warrants that Client's participation is permitted by the relevant governing instrument of such plan, that Client is duly authorized to enter into this Agreement, and that Client is independent of and unrelated to MCA and its affiliates. Client agrees to furnish such documents to MCA as required under ERISA. Client further agrees to advise MCA of any event which might affect this authority or the validity of this Agreement. Client additionally represents and warrants (i) that its governing instrument provides that an "investment manager" as defined in ERISA may be appointed, (ii) that the person executing and delivering this Agreement on behalf of Client is a "named fiduciary" (as defined in ERISA) or a "fiduciary" (as defined by Section 4975(e)(3) of the Code) who has the power under the plan to appoint an investment manager.

MCA further acknowledges that, in regard to those Clients for which it serves as an investment adviser as defined in section 3(38) of ERISA, it shall be a "fiduciary" as defined in section 3(21)(A) of ERISA. Client agrees to obtain and maintain for the period of this Agreement the bond required for fiduciaries by section 412 of ERISA and to include MCA among those covered by such bond.

## Payment of Management Fees

Refer to page 3, Section V, for details regarding all applicable management fees.

## SIGNATURE/AUTHORIZATION

By signing below, I, the Client, acknowledge and agree that:

a. I have read all of the terms and conditions of this entire Agreement including Exhibits, that govern this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time by MCA. By maintaining an account with MCA, I agree to all terms and conditions of this Agreement, as amended or modified by MCA. No term or condition may be changed without the express written consent of MCA. I certify under

penalty of perjury that the information disclosed in this document is correct

b. understand that MCA is relying on the representations and covenants contained in this Agreement, and I agree to indemnify, defend and hold harmless MCA and each director, officer, employee and agent, and each affiliate of such person, from any and all claims, demands, losses, damages, liabilities, costs, charges, reasonable attorney fees and expenses of any kind or nature arising out of anymisstatement or misrepresentation or omission of a material fact, which would, in light of the statements made, render them misleading, contained in this Agreement

c. Except for negligence or malfeasance, or violation of applicable law, neither MCA nor its officers, directors or employees shall be liable for any action performed or omitted to be performed or for any errors of judgment in managing the account.

**THE FEDERAL SECURITIES LAWS IMPOSE LIABILITIES UNDER CERTAIN CIRCUMSTANCES ON PERSONS WHO ACT IN GOOD FAITH, AND THEREFORE NOTHING HERIN IN ANY WAY CONSTITUTE A WAIVER OR LIMITATION OF ANY RIGHTS WHICH UNDERSIGNED MAY HAVE UNDER ANY FEDERAL SECURITIES LAWS.**

d. I have retained a copy of this Agreement for my records, and acknowledge receipt of MCA's Form ADV Part II and the prospectus or respective prospectuses.

e. I have reviewed this Agreement to ensure each

section is complete and all required documents and signatures have been provided. By submitting this Agreement to MCA, even if all documents and signatures are not received in good order, we will assume that you intend to open the account. MCA may or may not accept and open the account, in its sole discretion.

f. The parties agree that this Agreement constitutes the complete and exclusive understanding and agreement of the parties relating to the subject matter hereof and supersedes all prior understandings, agreements, negotiations, and discussions between the parties, whether written or oral.

g. **Counterpart Copies:** This Agreement may be signed in counterpart or duplicate copies and any signed counterpart or duplicate copy shall be equivalent to a signed original for all purposes.

I UNDERSTAND THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT WHICH IS CONTAINED IN SECTION IX, PAGE 4

| X | 5/27/15 |
|---|---|
| Client Signature (REQUIRED) | Date |

Peter J Graham
_____
Printed Name

| X | 5/27/15 |
|---|---|
| Joint Client Signature (REQUIRED if applicable) | Date |

Suzanne Y Graham
_____
Printed Name

| X | |
|---|---|
| Trustee/Administrator Signature (if applicable) | Date |

_____
Printed Name and Title

**FOR MCA USE ONLY**

| X | |
|---|---|
| Authorized Signature | Date |

_____
Title

# MCA PRIVACY INFORMATION

| FACTS | WHAT DOES MCA DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

The types of personal information we collect and share depend on the product or service you have with us. This information can include:

- Social Security number and account balances
- income and transaction history
- checking account information and wire transfer instructions

When you are *no longer* our customer, we continue to share your information as described in this notice.

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons MCA chooses to share; and whether you can limit this sharing.

| | Yes | No |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | No | We don't share |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | No | We don't share |
| **For non-affiliates to market to you** | No | We don't share |

For more information about MCAs privacy policies Call 1-877-300-9991 or email:

| | |
|---|---|
| **Who is providing this notice?** | Meridian Capital Advisors, LLC. ("MCA") |
| **How does MCA protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.

Contracts with our service providers require them to restrict access to your non-public personal information, and to maintain physical, electronic and procedural safeguards against unintended disclosure. |
| **How does MCA collect my personal information?** | We collect your personal information, for example, when you
- open an account or enter into an investment advisory contract
- provide account information or give us your contact
- make a wire transfer

We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only
- sharing for affiliates' everyday business purposes -- information about your creditworthiness
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. |
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.
- *Our affiliates include Bertram Global Commodities Fund, LP.* |
| **Non-affiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.
- *Non-affiliates we share with can include financial companie. such as custodians, transfer agents, registered representatives, financial advisers, fulfillment, proxy voting, and class action service providers* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.
- *MCA doesn't jointly market* |



Meridian Capital Advisors, LLC
88 Inverness Circle East. A208
Englewood, CO 80112
1-877-300-9991
meridiancapitalmanagement.com

Exhibit C

1

2

3

4

5

6

7

8

THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

9

10

PETER GRAHAM and SUZANNE
GRAHAM, husband and wife

NO.

11

Plaintiffs,

COMPLAINT FOR:

12

v.

**(1) NEGLIGENCE**

13

JEFFERY A. MASCIO, individually and on
behalf of his marital community, MERIDIAN
CAPITAL ADVISORS, LLC, a Colorado
Limited Liability Company

**(2) NEGLIGENT**
**     MISREPRESENTATION**
**(3) BREACH OF FIDUCIARY DUTY**
**(4) NEGLIGENT FAILURE TO**
**     SUPERVISE**
**(5) SECURITIES LAW VIOLATIONS**
**(6) CONSUMER PROTECTION ACT**
**     VIOLATIONS**

14

15

16

Defendants.

17

18

Plaintiffs Peter Graham and Suzanne Graham, husband and wife, for causes of action

19

against defendants Jeffery A. Mascio, individually and on behalf of his marital community, and

20

Meridian Capital Advisors, LLC (collectively, "Defendants"), allege as follows:

21

## I.     PARTIES

22

1.     Plaintiffs Peter Graham and Suzanne Graham ("Plaintiffs" or the "Grahams") are

23

residents of Seattle, Washington.

24

2.     Defendant Jeffery A. Mascio ("Mascio") is a resident of Colorado.  He was at the

25

time of all events at issue here an Investment Adviser Representative employed by defendant

26

Meridian Capital Advisors, LLC, a Registered Investment Adviser.  Mascio was also a

COMPLAINT- 1

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3062

1  stockbroker[1] registered with Dynasty Capital Partners, Inc.  All alleged acts were done on behalf

2  of Mascio, his marital community, and defendant Meridian Capital Advisors, LLC.

3          3.      Defendant Meridian Capital Advisors, LLC ("Meridian") is a Colorado limited

4  liability company.  Meridian is a Registered Investment Adviser firm.  On information and

5  belief, Mascio has a controlling ownership interest in Meridian.

6                        II.     **JURISDICTION AND VENUE**

7          4.      The Court has original jurisdiction over this matter pursuant to RCW 2.08.010.

8  The Court has jurisdiction over Defendants through the state long-arm statutes, RCW 4.28.180

9  and RCW 4.28.185, by transacting business in Washington, including without limitation

10 directing communications to the Grahams regarding their business relationship in King County,

11 Washington, meeting with the Grahams for business purposes in King County, Washington,

12 disseminating written materials to the Grahams regarding their business relationship in King

13 County, Washington, and committing tortious acts in King County, Washington.

14         5.      Venue is proper in this Court pursuant to RCW 4.12.020 and 4.12.025.

15                       III.    **FACTUAL ALLEGATIONS**

16 **A.      The Grahams' Relationship with Defendants.**

17         6.      In 2009, the Grahams engaged Carina Wealth Management as their investment

18 advisor, to manage the Grahams investment portfolio and retirement savings.

19         7.      The Grahams made clear to Carina Wealth Management that they did not have a

20 high tolerance for investment risk and that, in contrast, the objectives for their investment

21 portfolio were "Capital Preservation," "Income," and "Capital Appreciation."

22         8.      Carina Wealth Management merged with Meridian at the end of 2010.

23         9.      On or about January 1, 2011, Meridian mailed a letter to the Grahams in King

24 County, Washington, announcing Carina Wealth Management's merger with Meridian.  The

25

26 ---
[1] Stockbrokers are referred to in securities rules and regulations as "registered representatives."
For readability, the term "stockbroker" is used herein.

COMPLAINT- 2

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3062

letter stated, *inter alia*: "It is with great pleasure that we officially announce the merger of Carina Wealth Management and Meridian Capital Advisors!  This exciting new venture will provide you with exceptional performance reporting and the support you need for all of your financial planning decisions.  The addition of TD Ameritrade as custodian also allows for easy online account access and eliminates unnecessary fees.  Soon you will receive the account paperwork to facilitate the transfer process. ...  We look forward to introducing you to the additional staff at Meridian Capital Advisors and continuing a successful and prosperous relationship."  The letter was signed by Mascio and other Meridian personnel.

10.    Several months after the merger, Mascio took over the advisory management of the Grahams' accounts, which comprised nearly all of their investments and savings for their financial needs including retirement.  Meridian and Mascio became, and agreed to act as, investment advisers for the Grahams, and Mascio provided investment advisory services to the Grahams as part of his employment with Meridian.

11.    At Mascio and Meridian's recommendation, the Grahams opened accounts at TD Ameritrade to hold their securities investments, and transferred their investments held at another firm to the TD Ameritrade accounts.  Approximately one year later, and again at Mascio and Meridian's recommendation, the Grahams opened accounts at Charles Schwab Institutional to hold their securities investments, and transferred their investments held at TD Ameritrade to the Charles Schwab Institutional accounts.

**B.    The Grahams' Investment Objectives and Defendants' False Assurances.**

12.    On many occasions, the Grahams made clear to Mascio and Meridian that they could not tolerate a high degree of risk and that preservation of their investment capital was paramount, just as they had communicated to Carina Wealth Management before its merger with Meridian.  For instance, shortly after the merger, the Grahams indicated to Mascio that their goals for their investment portfolio were "college education for our children, aging parents requiring financial support, and our own retirement."

COMPLAINT- 3

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE:  (206) 452-0260
FAX:  (206) 397-3062

13.     On or about August 15, 2011, Mascio had dinner with the Grahams in Seattle, Washington, to discuss the Grahams' investment portfolio and objectives, Mascio's recommendations, and Mascio's management of the Grahams' accounts. During the dinner, the Grahams indicated again to Mascio that preservation of their investment capital was highly important to them, and Mascio assured them that their investments would be protected and that their investment capital would be preserved.

14.     Mascio managed the Grahams' investment portfolio from Summer 2011 to Fall 2015. During that time period, Mascio sent numerous emails and placed many phone calls to the Grahams in Seattle, Washington, regarding their investment accounts and his activities under their business relationship.

15.     After their dinner on or about August 15, 2011, Mascio also visited the Grahams in Seattle on several more occasions, including in May 2012, April 2013, January 2014, and November 2014.   At the meetings, Mascio provided the Grahams with written materials regarding their investment accounts.

16.     During their email, telephone, and in-person communications, the Grahams reiterated to Mascio their investment goals and objectives, including that preservation of their investment capital was paramount.  Mascio regularly assured the Grahams that their investment capital would be protected, that their investments were safe, and that any risks in their investment positions were hedged.  For example, Mascio often repeated to the Grahams the refrain: "The first step in making you money is not losing your money."

17.     In authorizing investments and Mascio's continued management of their accounts, the Grahams relied on Mascio's representations regarding their investments and prospective investments and his assurances that their investment capital would be protected, that their investments were safe, and that any risks in their investment positions were hedged.

18.     The Grahams also took actions in Seattle, Washington, in reliance on Mascio's and Meridian's communications and representations to the Grahams, including receiving,

COMPLAINT- 4

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3082

1    printing, and signing various documents and authorizations for transfers into the Grahams'

2    accounts at the request of Mascio and Meridian.

3          **C.**    **The Loss of the Grahams' Investment Portfolio.**

4        19.    In May 2015, at Mascio and Meridian's urging, the Grahams opened accounts at

5    Interactive Brokers to hold their securities investments, and transferred their investments held at

6    Charles Schwab Institutional to the Interactive Brokers accounts.  Before the transfer, Mascio

7    and Meridian's fee for their services was based on a small percentage of the total value of the

8    Grahams' investment portfolio under their management.  However, at the time of the transfer to

9    Interactive Brokers, and without any advance notice to the Grahams, Mascio and Meridian

10   changed their fee structure to 20 percent of the Grahams' accounts' performance.  In connection

11   with the move to Interactive Brokers, Mascio also assured the Grahams that they would not be

12   engaging in speculative or highly leveraged trading and "will not be venturing into high risk high

13   speculation markets."

14       20.    In August 2015, Defendants used the Grahams' accounts at Interactive Brokers —

15   without the Grahams' permission and against the Grahams' express directives — to execute a

16   series of very risky, highly speculative, highly leveraged, unsuitable, and imprudent transactions

17   in a security called VXX (the "VXX Transactions").  These transactions exposed the Grahams'

18   accounts, including all of the Grahams' cash, securities, and other investments held in the

19   accounts, to unlimited risk of loss and were extremely costly to the Grahams' portfolio.

20       21.    Before the VXX Transactions, the total value of the Grahams' investment

21   portfolio was more than $1.3 million.  As a result of the VXX Transactions, nearly all of the

22   value of the Grahams' investment portfolio was lost.

23       22.    As investment advisers, Defendants were fiduciaries for the Grahams.

24       23.    Mascio also acted as a securities salesperson in recommending and selling

25   securities to the Grahams.  However, Mascio was no longer a FINRA licensed or registered

26

COMPLAINT- 5

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3062

securities salesperson when he placed the orders for the VXX Transactions for the Grahams. Defendants did not inform the Grahams that Mascio had become unregistered.

24.     Defendants had a duty, in advising the Grahams, to exercise that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent investment adviser providing investment advice.

25.     Defendants had a duty to exercise reasonable care in obtaining and relaying information to guide the Grahams in their investment decisions.

26.     Defendants had a duty to obtain information from the Grahams about their financial status, tax status, investment objectives, investment time horizon, liquidity needs, risk tolerance, and such other information as would reasonably be needed in order to evaluate whether their recommendations and securities transactions on the Grahams' behalf were suitable for the Grahams.

27.     The VXX Transactions were an unsuitable investment for the Grahams.

28.     Defendants were negligent in executing the VXX Transactions and exposing the Grahams' investment portfolio to unlimited risk.

29.     Defendants also negligently misrepresented or omitted to disclose material facts to the Grahams about the VXX Transactions both before and after they effectuated those transactions for the Grahams.

30.     Defendants concealed from the Grahams the fact that the VXX Transactions exposed the Grahams to unlimited financial risk.

31.     After the VXX Transactions, Defendants made additional misrepresentations to and misled the Grahams about the true nature and circumstances of the VXX Transactions, resulting in further loss by the Grahams.

32.     Had the Grahams known about the VXX Transactions and the actual, unlimited risk their accounts were exposed to by the VXX Transactions, they would not have allowed the

COMPLAINT- 6

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX. (206) 397-3062

1  transactions or allowed Mascio or Meridian to continue to advise them and manage their

2  investments.

3      33.    As the proximate result of Mascio and Meridian's negligence, misrepresentations,

4  omissions, and breaches of fiduciary duty, the Grahams have suffered damages in an amount

5  which will be proved at the time of trial.

6                        IV.    **CAUSES OF ACTION**

7      A.    **First Cause of Action: Negligence.**

8      34.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1

9  through 33 above, as if fully set forth herein.

10     35.    As investment advisors, Defendants had a duty of care to give investment advice

11 to the Grahams consistent with the standard of care of a reasonable investment advisor.

12     36.    Defendants' conduct in managing the Grahams' accounts and providing

13 investment advice to the Grahams fell below the standard of care of a reasonable investment

14 adviser, and was negligent.

15     37.    Defendants' conduct in obtaining and relying on information to manage the

16 Grahams' accounts and provide investment advice to the Grahams fell below the standard of care

17 of a reasonable investment adviser, and was negligent.

18     38.    Defendants had a duty to have reasonable grounds for believing that the VXX

19 Transactions were suitable for the Grahams in light of their financial and other circumstances,

20 investment and financial objectives, and risk tolerances.

21     39.    The VXX Transactions were not suitable for the Grahams.

22     40.    Defendants did not have reasonable grounds for believing that the VXX

23 Transactions were suitable for the Grahams in light of their financial and other circumstances,

24 investment and financial objectives, and risk tolerances.

25     41.    As a direct result, the Grahams have been damaged, rendering Defendants liable

26 for damages in an amount to be proven at trial.

COMPLAINT- 7

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3082

**B.** **Second Cause of Action: Negligent Misrepresentation.**

42.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 41 above, as if fully set forth herein.

43.     Defendants negligently misrepresented material facts and omitted to disclose material facts to the Grahams about the VXX Transactions.

44.     As a direct result, the Grahams have been damaged, rendering Defendants liable for damages in an amount to be proven at trial.

**C.** **Third Cause of Action: Breach of Fiduciary Duty.**

45.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 44 above, as if fully set forth herein.

46.     As investment advisors to the Grahams, Defendants were fiduciaries.

47.     A fiduciary must exercise the utmost good faith, fairness, and fidelity in its dealings with its principal, including making full disclosure of all material facts.

48.     Any misrepresentations or omissions of material facts to a principal constitutes a breach of fiduciary duty.

49.     As fiduciaries, Defendants owed the Grahams an affirmative duty of utmost good faith to act solely in the Grahams' best interests; to make full and fair disclosure of all material facts; to provide only suitable investment advice; to determine the Grahams' financial condition, investment and financial objectives, and risk tolerances; to manage the Grahams' accounts in accordance with the Grahams' financial condition, investment and financial objectives, and risk tolerances; and to avoid exposing the Grahams' accounts to undue risk of loss.

50.     Defendants breached their fiduciary duties to the Grahams by, without limitation,

     (i)     executing the VXX Transactions, which were not suitable investments for the Grahams under all of the circumstances;

     (ii)    failing to have reasonable grounds for believing that the VXX Transactions were suitable for the Grahams in light of the Grahams'

COMPLAINT- 8

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX. (206) 387-3062

financial condition, investment and financial objectives, and risk tolerances;

(iii)   putting their own personal interests in receiving fees above the Grahams' interests;

(iv)   misrepresenting material facts and omitting to disclose material facts to the Grahams about the VXX Transactions both before and after the transactions, and about Defendants' fees;

51.   As a direct result, the Grahams have been damaged, rendering Defendants liable for damages in an amount to be proven at trial.

**D.   Fourth Cause of Action: Negligent Failure to Supervise.**

52.   Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 51 above, as if fully set forth herein.

53.   Meridian owed a duty to the Grahams to supervise Mascio's activities in the Grahams' accounts in an adequate and reasonable fashion.

54.   Meridian negligently failed to supervise and aided and abetted Mascio's misconduct alleged herein by, among other things,

(i)   granting Mascio permission to engage in securities transactions in the Grahams' accounts;

(ii)   failing to establish, maintain, and implement adequate supervisory systems and compliance guidelines designed to detect and prevent Mascio's misconduct alleged herein in Mascio's securities transactions in the Grahams' accounts;

(iii)   failing to adequately supervise the Grahams' accounts and Mascio's transactions therein; and

(iv)   failing to detect or take reasonable measures to correct Mascio's negligent and unsuitable VXX Transactions.

COMPLAINT- 9

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3082

55. As a direct result, the Grahams have been damaged, rendering Meridian liable for damages in an amount to be proven at trial.

**E.     Fifth Cause of Action: Violation of the Washington State Securities Act.**

56. Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 55 above, as if fully set forth herein.

57. The Washington State Securities Act, Chapter 21.20 RCW, makes it unlawful for any person, in connection with the purchase or sale of a security, directly or indirectly, to employ any device, scheme or artifice to defraud, to make any untrue statement of material fact or omit any material fact, or engage in any act, practice, or course of business that operates as a fraud or deceit.

58. Defendants were substantial contributive factors in the VXX Transactions for purposes of RCW 21.20.010 and RCW 21.20.430.

59. Meridian and/or Mascio were also control persons under RCW 21.20.430 with respect to the securities transactions conducted in the Grahams' investment account.

60. Defendants violated RCW 21.20.010(1), (2), and (3) by directly or indirectly employing a device, scheme, or artifice to defraud the Grahams; making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; and by engaging in acts, practices, or a course of business which operated as a fraud or deceit upon the Grahams — including without limitation by executing the VXX Transactions and exposing the Grahams' accounts to unlimited risk; omitting to disclose that risk to the Grahams and the fact that Defendants were investing the Grahams' accounts in an extraordinarily speculative, unsuitable, and imprudent manner; and misrepresenting to the Grahams that their investments would be protected, their investment capital would be preserved, their investment risks were hedged, they would not be engaging in speculative or highly leveraged trading, and they would not be venturing into high risk and high speculation markets.

COMPLAINT- 10

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3062

61.     The Grahams reasonably relied on Defendants' misrepresentations and omissions and deceptive schemes and practices.   Absent those misrepresentations and omissions, the Grahams would not have allowed the VXX Transactions or allowed Defendants to continue to advise them and manage their investments.   The VXX Transactions would not have occurred but for the deceitful acts and practices that Defendants employed in connection therewith.

62.     When Mascio executed the VXX Transactions for the Grahams' account, he also was neither registered as a securities salesperson nor exempt from registration.

63.     The Grahams are entitled to rescission to the extent available and/or damages pursuant to RCW 21.20.430, plus interest, costs, and attorneys' fees.

**F.      Sixth Cause of Action: Violation of Washington Consumer Protection Act.**

64.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 63 above, as if fully set forth herein.

65.     Defendants' conduct as an investment adviser to the Grahams — including in making material misrepresentations and omissions to the Grahams and executing the VXX Transactions — violated RCW 21.20.010, RCW 21.20.020, and RCW 21.20.035, and was unfair or deceptive in violation of RCW 19.86.020.

66.     Defendants' unfair or deceptive conduct occurred in trade or commerce.

67.     Defendants' unfair or deceptive conduct had a public interest impact.

68.     Defendants' violations of RCW 19.86.020 proximately caused injury to the Grahams.

69.     The Grahams are entitled to recover the actual damages they sustained as the proximate result of Defendants' violations of RCW 19.86.020, together with statutory penalties and the costs of this lawsuit, including reasonable attorneys' fees.

COMPLAINT- 11

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0280
FAX: (206) 397-3062

**G.      Seventh Cause of Action: Vicarious Liability.**

70.      Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 69 above, as if fully set forth herein.

71.      Mascio was a director, officer, and/or control person of Meridian.

72.      Defendants are jointly and severally liable to the Grahams for all damages caused to the Grahams, and for all other remedies to which the Grahams are entitled.

**H.      Eighth Cause of Action: Respondeat Superior.**

73.      Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 72 above, as if fully set forth herein.

74.      Mascio's act in connection with the VXX Transactions — including in making material misrepresentations and omissions to the Grahams and executing the VXX Transactions — were within the scope of his employment with Meridian.

75.      Meridian is liable in respondeat superior for all damages caused by, and all remedies to which the Grahams are entitled, for Mascio's misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests relief and judgment, jointly and severally, as follows:

A.      Judgment in favor of Plaintiffs for Defendants' negligence, negligent misrepresentations, breaches of fiduciary duty, violations of the Washington State Securities Act, and violations of the Washington Consumer Protection Act, and Meridian's negligent failure to supervise, vicarious liability, and liability in respondeat superior;

B.      Awarding all damages caused by Defendants in amounts to be proven at trial;

C.      Awarding rescission of the securities transactions to the extent available and/or damages, as provided for under the Washington State Securities Act;

D.      Awarding additional exemplary damages pursuant to RCW 19.86.090 equal to

COMPLAINT- 12

KELLEY, GOLDFARB, HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3062

three times the amount of Plaintiffs' actual damages;

E.    Ordering disgorgement of all of the fees and commissions paid to Defendants for their services to Plaintiffs;

F.    Awarding pre-judgment and post-judgment interest, including as provided for under the Washington State Securities Act;

G.    Awarding Plaintiffs their attorneys' fees and costs pursuant to RCW 21.20.430, RCW 19.86.090, or such other grounds as are provided for at law.

H.    Leave to amend this Complaint to conform to evidence later discovered, pled, or offered; and

I.    Such other and further relief as the Court deems proper and just.

DATED this 23rd day of October, 2015.

**Kelley, Goldfarb, Huck & Roth, PLLC**

Michael A. Goldfarb, WSBA No. 13492
Christopher M. Huck, WSBA No. 34104
Kit W. Roth, WSBA No. 33059
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
Telephone: (206) 452-0260
Facsimile: (206) 397-3062
E-mail: goldfarb@kdg-law.com
      huck@kdg-law.com
      roth@kdg-law.com

Attorneys for Plaintiffs Peter and Suzanne Graham

COMPLAINT- 13

KELLEY, GOLDFARB,
HUCK & ROTH, PLLC
700 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 452-0260
FAX: (206) 397-3062

Exhibit D



AMERICAN
ARBITRATION
ASSOCIATION | INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

March 7, 2016

Jeffery A. Mascio
Meridian Capital Advisors, LLC
88 Iverness Circle East
A208
Englewood, CO 80112
**Via Email to: j.mascio@meridiancapitalmanagement.com**

Case Number: 01-16-0000-3903

Peter Graham and Suzanne Graham
v.
Meridian Capital Advisors, LLC and
Jeffery A. Mascio

Dear Meridian Capital Advisors, LLC:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

The AAA notes that this consumer arbitration clause has not been previously registered through the AAA's Consumer Clause Registry as provided for in R-12 of the Consumer Rules. As such, the AAA will conduct an expedited review for this matter. The additional fee for this expedited review is $250 payable by the business. **The business is also directed to register this consumer arbitration clause at www.adr.org/consumerclauseregistry, at which time, the consumer clause review and Registry fee will also be due.** For more information regarding the Consumer Clause Registry, please see R-12 of the Consumer Rules. Payment of the expedited review fee does not satisfy the business' obligation to register its consumer clause.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $2,200 for 3 arbitrators. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $2,200, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $1,500 each for 3 arbitrators, totaling $6,950.** Please make the check payable to the American Arbitration Association and include a reference to the case number. Checks should be mailed to 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

The requested payment should be received no later than **March 21, 2016** and the AAA may decline to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn.
No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Please email ConsumerFiling@adr.org if you have any questions. The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Sincerely,

Consumer Filing Team
ConsumerFiling@adr.org
Fax (877) 304-8457

CC:   Kit W. Roth, Esq.
      Kelley, Goldfarb, Huck & Roth, PLLC
      700 5th Avenue
      Suite 6100
      Seattle, WA 98104
      **Via Email to:** roth@kdg-law.com

Exhibit E



AMERICAN ARBITRATION ASSOCIATION    INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

March 28, 2016

Jeffery A. Mascio
Meridian Capital Advisors, LLC
88 Iverness Circle East
A208
Englewood, CO 80112
Via Email to: j.mascio@meridiancapitalmanagement.com

**Case Number: 01-16-0000-3903**

Peter Graham and Suzanne Graham
-Vs-
Meridian Capital Advisors, LLC and
Jeffery A. Mascio

Dear Meridian Capital Advisors:

We have not received the administrative fees and arbitrator compensation from respondent as requested in our previous correspondence. Respondent is requested to remit payment in the amount of $6950 to the AAA to be received by **April 11, 2016.** As the claimant has met the filing requirements, respondent's fee is due regardless of whether the case settles or is withdrawn.

If payment was already sent, please send an email with the payment details so that payment is properly allocated. If this non-payment is simply an oversight on respondent's behalf, we trust payment will be made without delay.

**Please note: should the business not comply with our request by the above response date, we may decline to administer any other consumer disputes involving this business and request that the business remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision. Furthermore, pursuant to the R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.**

At this time we are inquiring as to whether the consumer is willing to pay this outstanding amount, minus the expedited review fee of $250, and seek recovery of these fees through the arbitrator's award. Claimant is not obligated to pay respondent's fee. Should claimant decide to advance the business' portion of the fee, please email me before the business' response deadline.

If we do not timely receive the business' portion of the filing fees, we will notify the parties that we have administratively closed this case and refund any payment received from claimant. Payment may be made by credit card, check or money order. To pay by credit card, please return the attached authorization to us. Please make checks/money orders payable to the American Arbitration Association. Checks should be mailed directly to the address above. Please reference the case number to ensure your payment is properly applied.

Thank you for your attention to this matter. If for any reason respondent will not be able to comply with our request by the noted response date, please send an email requesting an extension prior to the deadline. Please email consumerfiling@adr.org if you have any questions.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

Cc:   Kit W. Roth, Esq.
      Kelley, Goldfarb, Huck & Roth, PLLC
      700 5th Avenue
      Suite 6100
      Seattle, WA 98104
      Via Email to: roth@kdg-law.com

# Exhibit F



AMERICAN
ARBITRATION
ASSOCIATION          INTERNATIONAL CENTRE
                     FOR DISPUTE RESOLUTION

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

August 2, 2016

Michael A. Goldfarb, Esq.
Kelley, Goldfarb, Huck & Roth, PLLC
700 5th Avenue
Suite 6100
Seattle, WA 98104
**Via Email to: goldfarb@kdg-law.com**

Meridian Capital Advisors, LLC
88 Inverness Cir East
A208
Englewood, CO 80112
**Via Mail**

Case Number: 01-16-0002-9155

Peter and Suzanne Graham
v.
Meridian Capital Advisors, LLC AND Jeffrey Mascio

Dear Parties:

Claimant has filed with us a demand for arbitration. We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").

Prior to the filing of this arbitration, the business failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Meridian Capital Advisors, LLC and its consumers. These policies can be found on our web site, www.adr.org, in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules.

On a previously-filed consumer matter, this business did not timely submit its share of the filing fees and/or failed to waive a provision in its consumer contract that the AAA identified as a material and substantial deviation from the Protocol. The AAA sent correspondence informing the business that it may decline to administer consumer arbitrations involving this business and requested that the business remove the AAA from its consumer arbitration agreements so that there would be no confusion to the public.

In addition, Meridian Capital Advisors, LLC has not complied with our request to register its consumer clause on the AAA's Consumer Clause Registry (www.adr.org/consumerclauseregistry). Please note that submission of the expedited review fee on any particular matter does not satisfy the separate obligation to register the consumer clause.

Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a

complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

Please email ConsumerFiling@adr.org if you have any questions. However, if the business has not yet registered its clause in accordance with the notification requirement, the AAA will not respond to any inquiries regarding its decision to decline to administer this dispute until the business has submitted its consumer arbitration clause to the Consumer Clause Registry.

Sincerely,

Consumer Filing Team
ConsumerFiling@adr.org
Fax: (877) 304-8457

Exhibit G





# Consumer
# Arbitration Rules

 AMERICAN ARBITRATION ASSOCIATION©

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014
Cost of Arbitration Effective January 1, 2016

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)** The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

   1) have specified that these *Consumer Arbitration Rules* shall apply;

   2) have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the *Consumer Arbitration Rules*;

   3) the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

   4) the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules*.

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

- Credit card agreements
- Telecommunications (cell phone, ISP, cable TV) agreements
- Leases (residential, automobile)
- Automobile and manufactured home purchase contracts
- Finance agreements (car loans, mortgages, bank accounts)
- Home inspection contracts
- Pest control services

- Moving and storage contracts
- Warranties (home, automobile, product)
- Legal funding
- Health and fitness club membership agreements
- Travel services
- Insurance policies
- Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

- Home construction and remodeling contracts
- Real estate purchase and sale agreements
- Condominium or homeowner association by-laws
- Business insurance policies (including crop insurance)
- Commercial loan and lease agreements
- Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer Arbitration Rules*. If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

**(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

- Briefly explain the dispute

- List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

- Specify the amount of money in dispute, if applicable

- Identify the requested location for the hearing if an in-person hearing is requested

- State what the claimant wants

**(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

(a) The parties may take their claims to small claims court without first filing with the AAA.

(b) After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

(c) After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

R-11. Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol.*

R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1. notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.

2. provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to

that clause is only an administrative determination by the AAA and cannot be relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/consumerclauseregistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/consumerclauseregistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

R-14. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## Costs of Arbitration (including AAA Administrative Fees)*

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on a rate established by the AAA as set forth below. If a Preliminary Management Hearing is held by the arbitrator, the arbitrator is entitled to one-half the arbitration compensation rate for a full hearing day or a documents-only hearing. Once evidentiary hearings are held, the arbitrator is entitled to the full-day rate of compensation. The business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in sections (v) and (vii) below, and administrative fees (which include Filing and Hearing Fees) are not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

\* Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)

| Party | Desk Arbitration | In-Person or Telephonic Hearing – Single Arbitrator | In-Person or Telephonic Hearing – Three Or More Arbitrators |
|---|---|---|---|
| Consumer | Filing Fee—$200 (nonrefundable) | Filing Fee—$200 (nonrefundable) | Filing Fee—$200 (nonrefundable) |
| Business | Filing Fee—$1,700<br><br>Arbitrator Compensation—$750 per case | Filing Fee—$1,700<br><br>Hearing Fee—$500<br><br>Arbitrator Compensation—$1,500 per hearing day | Filing Fee—$2,200<br><br>Hearing Fee—$500<br><br>Arbitrator Compensation—$1,500 per hearing day per arbitrator |

(i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $1,700 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $2,200 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

There shall be no filing fee charged for a counterclaim.

The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.

(ii) Neutral Arbitrator's Compensation

Arbitrators serving on a case with an in-person or telephonic hearing will receive compensation at a rate of **$1,500 per day.**

Arbitrators serving on a case with a desk arbitration/documents-only hearing will receive compensation at a rate of **$750 per case.**

The AAA reserves the right to raise the daily or per-case arbitrator compensation rate because of the complexity of the case or for processes and procedures beyond those provided for in these Rules and which may be required by the parties' requests, agreement, or stipulation (1) at the time of the AAA's initiation of the case; (2) upon the addition of a new party; (3) when a change of claim is made and, if necessary, approved by the arbitrator(s); (4) or if circumstances arise during the course of the case due to the complexity of issues and submissions by the parties.  Any determination by the AAA on compensation rates is in the sole discretion of the AAA and such decision is final and binding on the parties and arbitrator.

(iii) Refund Schedule

Once the claimant has met the filing requirements, refunds to the business will be calculated as follows:

- if the case is settled or withdrawn within 30 calendar days, 50% of the filing fee will be refunded to the business.

However, no refund of the filing fee will be made once an arbitrator has been appointed and no refunds will be made on awarded cases. The date the claimant's filing requirements are met is the date used to calculate any refund of filing fees. If the matter is settled or withdrawn prior to receipt of filing fees from the business, the AAA will bill the business in accordance with this refund schedule.

(iv) Hearing Fees

For telephonic hearings or in-person hearings held, an additional administrative fee of $500 is payable by the business.

There is no AAA hearing fee for the initial Administrative Conference (see R-10).

(v) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains rental hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the business.

(vi) Abeyance Fee

Parties on cases held as inactive for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the opposing party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed. All filing requirements, including payment of filing fees, must be met before a matter may be placed in abeyance.

(vii) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business.

(viii) Consumer Clause Review and Registry Fee

Please note that all fees described below are **nonrefundable.**

For businesses submitting a clause, the cost of reviewing the clause and maintaining that clause on the Registry is $500.  A yearly Registry fee of $500 will be charged to maintain each clause on the Registry for each calendar year thereafter.

If the AAA receives a demand for consumer arbitration from an arbitration clause that was not previously submitted to the AAA for review and placement on the Registry, the business will incur an additional $250 fee to conduct an expedited review of the clause.

Any subsequent changes, additions, deletions, or amendments to currently registered arbitration agreement must be resubmitted for review and a review fee of $500 will assessed at that time.

Exhibit H



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013
Fee Schedule Amended and Effective July 1, 2016

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Assistant Vice Presidents

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . .7

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9


Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

R-1. Agreement of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

R-2. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

R-3. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

R-4. Filing Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

R-8. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-9. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-10. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-11. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-12. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

R-13. Direct Appointment by a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . . .16

R-15. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

R-16. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

R-17. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

R-18. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

R-19. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

R-21. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

R-22. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . .19

R-23. Enforcement Powers of the Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-24. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-25. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-26. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-27. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-28. Stenographic Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-29. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-30. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-31. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . .22

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-33. Dispositive Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-37. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-38. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-39. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-40. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-41. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-42. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-43. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-44. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-45. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-46. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-47. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-48. Award Upon Settlement—Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-49. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-50. Modification of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-51. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . .29

R-52. Applications to Court and Exclusion of Liability. . . . . . . . . . . . . . . . . . . . . . . . . .29

R-53. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-54. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-55. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-56. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-57. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-58. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

American Arbitration Association

Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

    P-1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

    P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32


Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-1. Limitation on Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-3. Serving of Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-5. Exchange of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

    E-6. Proceedings on Documents and Procedures for the Resolution of Disputes
    Through Document Submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

    E-7. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    E-10. Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36


Procedures for Large, Complex Commercial Disputes . . . . . . . . . . . . . . . . . . . . . . .37

    L-1. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38


Administrative Fee Schedules (Standard and Flexible Fees) . . . . . . . . . . . . . . . . . . .38


Commercial Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

    M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . .40

    M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

    M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

    M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

    M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

    M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

    M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-12. Termination of Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-13. Exclusion of Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-15. Deposits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

M-17. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013
Fee Schedule Amended and Effective July 1, 2016

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone. 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq
Vice President
Phone. 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Assistant Vice Presidents

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email. BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9


Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    R-1. Agreement of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    R-2. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    R-3. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    R-4. Filing Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    R-8. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    R-9. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    R-10. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    R-11. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    R-12. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

    R-13. Direct Appointment by a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . . .16

    R-15. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

    R-16. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

    R-17. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

    R-18. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

    R-19. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

    R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

    R-21. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

    R-22. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . . . . . .19

    R-23. Enforcement Powers of the Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    R-24. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    R-25. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

    R-26. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

    R-27. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-28. Stenographic Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-29. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-30. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-31. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . .22

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-33. Dispositive Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-37. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-38. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-39. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-40. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-41. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-42. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-43. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-44. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-45. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-46. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-47. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-48. Award Upon Settlement—Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-49. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-50. Modification of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-51. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . .29

R-52. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . .29

R-53. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-54. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-55. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-56. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-57. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-58. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

    P-1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

    P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32


Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-1. Limitation on Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-3. Serving of Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . .34

    E-5. Exchange of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

    E-6. Proceedings on Documents and Procedures for the Resolution of Disputes
    Through Document Submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

    E-7. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    E-10. Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36


Procedures for Large, Complex Commercial Disputes . . . . . . . . . . . . . . . . . . . . . . .37

    L-1. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38


Administrative Fee Schedules (Standard and Flexible Fees) . . . . . . . . . . . . . . . . . .38


Commercial Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

    M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

    M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . .40

    M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

    M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . .41

    M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

    M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

    M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

    M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-12. Termination of Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-13. Exclusion of Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-15. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

M-17. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44



Commercial Arbitration Rules
and Mediation Procedures
(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at **www.adr.org.**

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $75,000, the rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in

reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs. The key features of these procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

## Commercial Arbitration Rules

### R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.

Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000 or more, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-3 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures, the Procedures for Large, Complex Commercial Disputes, or the Procedures for the Resolution of Disputes through Document Submission (Rule E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Sections R-1 through R-58 of these rules.

---

\* *A dispute arising out of an employer promulgated plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures.*

R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

R-4. Filing Requirements

**(a)** Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.

**(b)** Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

   **i.** The filing party shall include a copy of the court order.

   **ii.** The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

   **iii.** The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to R-32.

**(c)** It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination.

**(d)** Parties to any existing dispute who have not previously agreed to use these rules may commence an arbitration under these rules by filing a written submission agreement and the administrative filing fee. To the extent that the parties' submission agreement contains any variances from these rules, such variances should be clearly stated in the Submission Agreement.

**(e)** Information to be included with any arbitration filing includes:

    **i.** the name of each party;

    **ii.** the address for each party, including telephone and fax numbers and e-mail addresses;

    **iii.** if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party;

    **iv.** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

    **v.** the locale requested if the arbitration agreement does not specify one.

**(f)** The initiating party may file or submit a dispute to the AAA in the following manner:

    **i.** through AAA WebFile, located at **www.adr.org;** or

    **ii.** by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing.

**(g)** The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

**(h)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

**(i)** If the filing does not satisfy the filing requirements set forth above, the AAA shall acknowledge to all named parties receipt of the incomplete filing and inform the parties of the filing deficiencies. If the deficiencies are not cured by the date specified by the AAA, the filing may be returned to the initiating party.

R-5. Answers and Counterclaims

**(a)** A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

R-8. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

R-9. Mediation

In all cases where a claim or counterclaim exceeds $75,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally opt out of this rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

R-10. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

R-11. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

**(a)** When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of

arbitration, subject to the power of the arbitrator after appointment, to make a final determination on the locale.

**(b)** When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator upon appointment that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

**(c)** If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

R-12. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

**(a)** The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**(b)** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

Exhibit I

**Subject:** Transaction Receipt from American Arbitration Association for $500.00 (USD)
**Date:** Wednesday, May 11, 2016 at 11:05:02 AM Mountain Daylight Time
**From:** Auto-Receipt
**To:** Jeffery Mascio

Description:     AAA Consumer Clause Registry Fee
Invoice Number  20160511130337

---

**Billing Information**                        **Shipping Information**
Jeffery Mascio
Meridian Capital Advisors, LLC
88 Inverness Cir East A208
Englewood, CO 80112
US
j.mascio@meridiancapitalmanagement.com
720-763-9119

---

**Total:  $500.00 (USD)**

Date/Time:            11-May-2016 10:04:57 PDT
Transaction ID:       8397879736
Payment Method:       Visa xxxx8766
Transaction Type:     Purchase
Auth Code:            942768
Entry Mode:           Keyed

American Arbitration Association
New York, NY 10271
US
corpfinance@adr.org

**Subject:**      Consumer Clause Registration Confirmation.

**Date:**        Wednesday, May 11, 2016 at 11:05:27 AM Mountain Daylight Time

**From:**        American Arbitration Association

**To:**          Test Registration, Jeffery Mascio

**Attachments:** ATT00001.png, investment management agreement.pdf

Thank you for submitting your consumer arbitration clause for review by the AAA. An inv
payment of the non-refundable Consumer Clause Review and Registry fee will be sent to t
identified as the recipient for communications related to the clause registry.

We will review the materials you have submitted to determine if they are in material co
Process Protocol(Consumer Protocol), and you can expect to hear from the AAA again with
regarding that review. If the AAA determines that your arbitration clause is materially
Protocol, you will be advised that your clause and company name will be posted to the H
that your arbitration clause is not materially compliant with the Consumer Protocol, th
that resulted in a determination not to administer arbitrations arising out of your cla
with information about your options to correct the identified deficiency.

If you have any additional questions regarding your submission or the Registry, please
consumerreview@adr.org

**Thank you,**

The AAA ConsumerTeam

#### Company Information

Business:
Meridian Capital Advisors, LLC
Related Business:

#### Business Contact

First Name: Jeffery
Last Name: Mascio
Company: Meridian Capital Advisors, LLC
Email Address: j.mascio@meridiancapitalmanagement.com
Address 1: 88 Inverness Cir East
Address 2:A208
Address 3:
City: Englewood
State: CO
Zip Code: 80112
Telephone: 720-763-9119
Fax:
#### Contact Information for Display on Consumer Clause Registry

Company: Meridian Capital Advisors
Address 1: 88 Inverness Cir East
Address 2:A208
Address 3:
City: Englewood
State: CO
Zip Code: 80112

**Optional Contact Information for Display on Consumer Clause Registry**

First Name:
Last Name:
Email Address:
Telephone:
Fax:

**Arbitration Clause Information**

The name/title of contact:
Investment Management Agreement

The name/title of consumer arbitration clause:
IX Arbitration

Arbitration agreement:
Please find enclosed the attachment.



,

**T:**
**F:**

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

Exhibit J



AMERICAN ARBITRATION ASSOCIATION®

Neil B. Currie
**VICE PRESIDENT**

725 S. Figueroa St., Ste. 400
Los Angeles, CA 90017
T 213 622 6358
E CurrieN@adr.org

adr.org

August 25, 2016

**<u>Sent Via Email Only</u>**

Jeffery Mascio
Meridian Capital Advisors, LLC
88 Inverness Cir East, A208
Englewood, CO 80112

Re: Meridian Capital Advisors, LLC

Dear Mr. Mascio,

Thank you for registering the Meridian Capital Advisors, LLC consumer arbitration clause through the AAA's Consumer Clause Registry.

Beginning September 1, 2014, it is the policy of the American Arbitration Association ("AAA") to administer consumer disputes in accordance with the *Consumer Arbitration Rules (Consumer Rules)* and the *Consumer Due Process Protocol (Protocol)*. These documents may be found on our web site at www.adr.org. In order to determine if the arbitration agreement substantially and materially complies with the due process standards of the *Consumer Due Process Protocol*, **the AAA reviews the parties' arbitration clause only**, and not the entire contract. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations. However, the AAA's review is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

Based upon the administrative review of the Meridian Capital Advisors, LLC consumer arbitration clause, under current AAA policy, the AAA is prepared to administer consumer-related disputes filed pursuant to this clause. Meridian Capital Advisors, LLC and its consumer arbitration clause will be included on the Consumer Clause Registry. The AAA's willingness to administer disputes under Meridian Capital Advisors, LLC's consumer arbitration clause is contingent upon Meridian Capital Advisors, LLC's continued willingness to have all present and future consumer related-disputes that are handled by the AAA administered in accordance with the Consumer Rules and the Protocol. The AAA reserves the right to decline administration in the future if Meridian Capital Advisors, LLC deviates from the *Consumer Rules* and/or *Protocol* or does not comply with the "Consumer Clause Registry Terms and Conditions."

The AAA will send future Registry annual fee notices to the contact provided by Meridian Capital Advisors, LLC. The business should immediately notify the AAA at consumerreview@adr.org of any contact changes. Failure to notify the AAA of an internal contact may result in removal from the Registry.



**AMERICAN ARBITRATION ASSOCIATION**®

Note that this willingness to accept consumer claims does not extend to those cases covered by the AAA's moratorium on accepting consumer debt collection arbitration cases.  Information on the moratorium is available on our web site, here:

http://www.adr.org/sp.asp?id=36427

This letter is not a contract, promise and/or agreement to provide any services pursuant to the Meridian Capital Advisors, LLC consumer arbitration clause and should not be construed as an opinion or assurance of the legal enforceability of the arbitration agreements.  The AAA further reserves the right to decline administration of cases under the Meridian Capital Advisors, LLC arbitration agreements in the future due to changes in the state of existing law and/or changes in AAA policies, rules and procedures.

Very truly yours,

*Neil B. Currie*

Neil B. Currie
Vice President

Exhibit K

# AMERICAN ARBITRATION ASSOCIATION
# ONLINE FILING ACKNOWLEDGEMENT

**This confirmation serves as the Demand for Arbitration or Request for Mediation for this filing.**
**To institute proceedings, please send a copy of this form and the parties' dispute resolution agreement to the opposing party.**
**Case # : 01-17-0000-3478**
This will acknowledge receipt of a request for dispute resolution services for the claim and parties detailed below.

| | |
|---|---|
| This claim has been filed for | Arbitration |
| This matter has been filed in accordance with | Commercial Arbitration Rules |
| The fee paid at the time of filing was | $750.00 |
| This request was received by the AAA on | 17-Jan-2017 |

**Claim Description**

A dispute has arisen between parties. On October 26, 2015, Defendants served Plaintiffs with a complaint and filed the action on January 22, 2016 in King County Superior Court, asserting claims for (1) negligence; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) negligent failure to supervise; (5) securities law violations; and (6) consumer protection act violations.

Claims clearly arising out of the Agreement. As such, these claims must be Arbitrated in accordance with the Agreement's Arbitration clause.

Defendant has repeatedly refused to Arbitrate in accordance the Agreement's arbitration clause set forth in section IX ARBITRATION of the Agreement.

Furthermore, Plaintiff has filed a petition in Denver District court seeking and order to Compel Arbitration in accordance with the Investment Management Agreement.

Plaintiff is seeking damages of 25,000 for breach of contract.

| | |
|---|---|
| Claim Amount | $25,000.00 |
| Do you have a Non-monetary aspect to your claim? | N |
| Additional Damages | |
| | Amount |

| | |
|---|---|
| Requested Hearing Locale | Denver, Colorado, United States of America |
| **Fee Schedule Option** | Standard |
| **ADR Agreement** | Client hereby agrees that all controversies and disputes which may arise between Client and Advisor concerning any transaction or the construction, performance, or breach of this Agreement between Client and Advisor. whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding arbitration. Client understands that this Agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such waiver would be void under federal securities laws. Any arbitration shall be held in the City of Denver, State of |

Colorado, administered by the American Arbitration Association (the "AAA") pursuant to the Federal Arbitration Act in accordance with this Agreement and the Commercial Arbitration Rules of the AAA. If the Federal Arbitration Act is inapplicable lo any such controversy or dispute for any reason, such arbitration shall be conducted pursuant to the Colorado Uniform Arbitration Act for Commercial Disputes (emphasis added) and in accordance with this Agreement and the Commercial Arbitration Rules of the AAA. To the extent that any inconsistency exists between this Agreement and such statutes or rules, this Agreement shall control.

## Parties and Representatives

### Party 1

| | |
|---|---|
| Category | Financial Advisor |
| Name | Jeffery  Mascio |
| Company Name | Meridian Capital Advisors, LLC |
| Address | 88 Inverness Cir East |
| | A208 |
| | Englewood, CO 80112 |
| Phone | (720)763-9119 |
| Fax | (877)211-3896 |
| Email | j.mascio@meridiancapitalmanagement.com |
| The Party is the | Company |

### Representative 1

| | |
|---|---|
| Name | Jeffery  Mascio |
| Firm Name | Meridian Capital Advisors, LLC |
| Address | 88 Inverness Cir East |
| | A208 |
| | Englewood, CO 80112 |
| Phone | (720)763-9119 |
| Fax | (877)211-3896 |
| Email | j.mascio@meridiancapitalmanagement.com |

### Party 2

| | |
|---|---|
| Category | Client / Customer / Patient |
| Name | Suzanne  Graham |
| Company Name | Peter & Suzanne Graham |
| Address | 2743 NE 103rd Street |
| | Unit B |
| | Seattle, WA 98125 |
| Phone | |
| Fax | |
| Email | |
| The Party is the | Individual |

### Representative 2

| | |
|---|---|
| Name | Kit W Roth |
| Firm Name | Kelley, Goldfarb, Huck & Roth, PLLC |
| Address | 700 Fifth Avenue |
| | Suite 6100 |
| | Seattle, WA 98104 |
| Phone | (452)020-6/ |
| Fax | |
| Email | |

**Party 3**

| | |
|---|---|
| Category | Client / Customer / Patient |
| Name | Peter   Graham |
| Company Name | Peter & Suzanne Graham |
| Address |  2742 NE 103rd Street |
| | Unit B |
| | Seattle, WA 98125 |
| Phone | |
| Fax | |
| Email | |
| The Party is the | Company |

**Representative 3**

| | |
|---|---|
| Name | Kit W Roth |
| Firm Name | Kelley, Goldbarb, Huck & Roth, PLLC |
| Address | 700 Fifth Ave |
| | Suite 600 |
| | Seattle, WA 98104 |
| Phone | |
| Fax | |
| Email | |